```
              THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| CLAUS PETER SPETH, | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 95-264 (JBS) |
| v. |  |
| ROBERT GOODE et al., | **MEMORANDUM OPINION** |
| Defendants. |  |

**SIMANDLE**, District Judge:

    This matter is before the Court upon Plaintiff's motion for reconsideration [Docket Item 63] of the Court's December 29, 2004 Opinion and Order granting in part Defendants' motion to dismiss Plaintiff's Third Amended Complaint.  THIS COURT FINDS AS FOLLOWS:

    1.  Plaintiff Claus Speth filed this lawsuit in 1995, asserting numerous claims arising out of an investigation into his conduct as Gloucester County Medical Examiner that Defendant Robert Goode launched in 1991.  As a result of the investigation, Plaintiff's certification as a medical examiner and his medical license were suspended, and criminal charges were brought against him.  Plaintiff was found guilty on one of the three criminal charges, and his conviction was upheld on appeal.  He brought this action against numerous defendants associated with his investigation and prosecution, asserting a variety of claims premised upon federal and New Jersey constitutional law and New

Jersey common law.

2.  Among the claims Plaintiff asserted against Defendants were his claims that Defendants conspired to maliciously abuse the criminal process and to maliciously prosecute Plaintiff by charging him with crimes they knew he did not commit (Counts XI, XII, and XIII).  The criminal prosecution underlying these claims arose out of allegations that in 1993, while performing an autopsy on behalf of the Estate of the deceased, Ronald Puttorak, Plaintiff tampered with evidence by removing certain tissue from Mr. Puttorak's hyoid bone.  Plaintiff was ultimately convicted of having tampered with a witness in his criminal case, but the evidence tampering charges resulted in a deadlocked jury and were eventually dismissed upon Plaintiff's formal demand for a speedy retrial.  In his Third Amended Complaint, Plaintiff charged that it was Defendant Natarajan who tampered with Mr. Puttorak's hyoid bone, but that Plaintiff was prosecuted for the crime in furtherance of Defendant Goode's vendetta against Plaintiff.[1]

3.  On May 21, 2004, Defendants moved to dismiss Plaintiff's Third Amended Complaint.  In its December 29, 2004 Opinion and Order (the "December 2004 Opinion and Order"), the Court granted in part and denied in part Defendants' motion.  In the portions

---

[1] The complicated factual and procedural history of this case is explained in greater detail in the Court's December 29, 2004 Opinion.  For purposes of the instant matter, the Court summarizes only those facts pertinent to Plaintiff's motion for reconsideration.

of the Opinion that are relevant to the instant motion, the Court granted Defendants' motion to dismiss Plaintiff's malicious prosecution and abuse of process claims (Counts XI, XII, and XIII).

4. With regard to Plaintiff's malicious prosecution claim, the Court recognized that to succeed on such a claim, a plaintiff must establish that (1) the defendant initiated a criminal action against the plaintiff (2) with malice (3) without probable cause and (4) that the criminal action terminated in the plaintiff's favor. See Helmy v. City of Jersey City, 178 N.J. 183, 190 (2003). The Court found that Plaintiff failed to satisfy both the third and fourth elements. With regard to the probable cause prong, the Court reasoned:

> Under New Jersey law, even an acquittal (which is not present here) sheds no light on the existence of probable cause at the time of the initial indictment . . . . That the deadlocked charges were ultimately dropped rather than re-charged does not support Plaintiff's contention that prosecutors lacked probable cause to bring these charges initially . . . . Indeed, a deadlocked jury suggests that at least one juror (and possibly more) was persuaded beyond a reasonable doubt that the evidence proved Dr. Speth's guilt . . . If, as in Speth's trial, at least one juror believed, after due deliberation, that proof of guilt existed beyond a reasonable doubt, as evidenced in the deadlock, then it cannot be said, absent juror corruption or incompetence, that probable cause to bring these charges was lacking . . . . Moreover, the trial judge, at the conclusion of the State's case, permitted all three counts to go forward for the jury's consideration, which suggests that the trial judge found the evidence sufficient as a basis for a possible finding of guilt beyond a reasonable doubt on all three counts.

(Docket Item 53 at 45-46) (citations omitted).

5. The Court likewise held that Plaintiff could not satisfy the favorable termination element, noting that under New Jersey law, "[p]roceedings are terminated in favor of the accused . . . only when their final disposition is such as to indicate the innocence of the accused." Freeman v. State, 347 N.J. Super. 11, 27 (App. Div. 2002) (internal quotations and citations omitted). In Plaintiff's case, the Court noted that following his conviction for witness tampering, the two remaining charges were dismissed upon Plaintiff's demand for a speedy retrial after they were mistried, giving no indication of Plaintiff's innocence as Freeman requires. The Court further concluded that the favorable termination element requires an examination of the prosecution as a whole:

> Here, the criminal proceeding Plaintiff contests included a trial and sentencing on the count of conviction which indisputably terminated unfavorably to Dr. Speth. The parties have identified no New Jersey case in which the element of favorable termination was parsed so narrowly as to permit examination on a count-by-count basis, nor has this Court located any. Where three related counts are tried to a jury, resulting in one felony conviction and two hung verdicts, where the conviction was affirmed on appeal, it is clear as a matter of law that the proceedings did not terminate in favor of the accused.

(Docket Item 53 at 47.)

6. As to Plaintiff's malicious abuse of process claim, the Court noted that in order for a litigant to state such a claim, he must allege that the defendant took "further acts" for illegitimate purposes after the initiation of prosecution. The

4

Court explained that

> The purpose of the "further acts" requirement is to distinguish malicious abuse of process from malicious prosecution. Otherwise, malicious abuse of process could serve as the tort claim every time when the existence of probable cause, as in this case, defeats the tort of malicious prosecution, simply by alleging that the otherwise appropriate prosecution was motivated by a malicious purpose.

(Id. at 51.)  Plaintiff, after three attempts to amend his Complaint, failed to allege that any Defendant took such "further acts" subsequent to the initiation of his prosecution.  The Court thus found that Plaintiff had failed to state a claim for malicious abuse of process and granted Defendants' motion to dismiss Count XI.

   7.   After the Court entered its December 2004 Opinion and Order, Plaintiff moved for reconsideration of, inter alia, its dismissal of Counts XI, XII, and XIII of the Third Amended Complaint.  Finding no error in its initial Opinion, the Court denied Plaintiff's motion.  (Docket Item 58.)

   8.   Plaintiff once again has moved the Court to reconsider its decision to dismiss his claims for malicious prosecution and abuse of process.[2]  Plaintiff argues that Yarris v. County of

---

[2] Following the entry of the December 2004 Opinion and Order, the Court administratively terminated this case without prejudice to reopening following the resolution of related, then-ongoing State court proceedings.  On June 19, 2007, the Court granted Plaintiff's unopposed motion to reopen the case.  The motion for reconsideration presently under consideration was filed thereafter.

Delaware, 465 F.3d 129 (3d Cir. 2006), decided two years after the Court granted Defendants' motion to dismiss Counts XI through XIII, changed the law in this Circuit governing the Court's review of his malicious prosecution claim and indicates that the Court should reconsider its dismissal of Plaintiff's claims. According to Plaintiff, "[t]he pertinent Yarris holdings can be reduced to the straight-forward proposition that where findings of probable cause depended upon falsified evidence, the probable cause findings do not bar a civil action against the evidence falsifiers."  (Pl.'s Br. 2.)  Plaintiff argues that this Court would have ruled in his favor had Yarris been decided prior to its December 2004 Opinion and should thus revisit that Opinion in light of Yarris.

9.   The Court finds that Yarris provides no basis for it to reconsider its December 2004 Opinion and will deny Plaintiff's motion for reconsideration.  Local Civil Rule 7.1(i) governs the Court's review of Plaintiff's motion.  Rule 7.1(i) requires the moving party to set forth the factual matters or controlling legal authorities it believes the court overlooked when rendering its initial decision.  L. Civ. R. 7.1(i); see also United States v. Compaction Systems Corp., 88 F. Supp. 2d 339, 345 (D.N.J. 1999) ("The operative word in the rule is 'overlooked.'  Mere disagreement with a court's decision normally should be raised through the appellate process and is inappropriate on a motion

for reargument."). Whether to grant a motion for reconsideration is a matter within the Court's discretion, but it should only be granted where such facts or legal authority were indeed presented but overlooked. See DeLong v. Raymond Int'l Inc., 622 F.2d 1135, 1140 (3d Cir. 1980), overruled on other grounds by Croker v. Boeing Co., 662 F.2d 975 (3d Cir. 1981); Williams v. Sullivan, 818 F. Supp. 92, 93 (D.N.J. 1993). To prevail on a motion for reconsideration, the movant must show either

> (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court . . . [rendered the judgment in question]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.

Max's Seafood Café ex rel. Lou-Ann, Inc., v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).

10.  Yarris worked no "intervening change in the controlling law" applicable to the Court's December 2004 decision. Id. At issue in Yarris was whether prosecutors and detectives were entitled to absolute or qualified immunity for destroying and withholding evidence and soliciting a false confession. With regard to the question of prosecutors' absolute immunity, the court held that "whether a prosecutor is entitled to absolute immunity depends on whether she establishes that she was functioning as the state's 'advocate' while engaging in the alleged conduct that gives rise to the constitutional violation." Yarris, 465 F.3d at 136. The court also held that the detectives

7

were not entitled to qualified immunity for consciously destroying exculpatory evidence.  Id. at 142-43.  In short, Yarris focused exclusively on questions of absolute and qualified immunity, matters which were not at issue in the Court's assessment of Plaintiff's malicious prosecution and abuse of process claims.

    11.  Contrary to Plaintiff's characterization of Yarris' holding, Yarris does not affect the Court's rationale for dismissing Counts XI through XIII of the Third Amended Complaint. Yarris did not even address the issue of probable cause, and certainly does not impact upon the Court's determination that where "a deadlocked jury . . . [in which] at least one juror (and possibly more) was persuaded beyond a reasonable doubt that the evidence proved Dr. Speth's guilt . . . it cannot be said, absent juror corruption or incompetence, that probable cause to bring these charges was lacking."  (Docket Item 53 at 45-46.)

    12.  Yarris is likewise irrelevant to the Court's conclusion that Plaintiff could not satisfy the favorable termination requirement of his malicious prosecution claim, since Plaintiff was convicted on one of the three related counts for which he was tried.  Once again, Yarris' discussion of absolute and qualified immunity has nothing to do with the Court's determination on this matter, and, as such, does not constitute an "intervening change in the controlling law."  Max's Seafood

Café, 176 F.3d at 677.  Recognizing that Yarris does not address, much less change, the law on the favorable termination element of a malicious prosecution claim, Plaintiff urges the Court to reconsider its analysis of that element by rehashing arguments considered and rejected by the Court in its December 2004 Opinion.  Because "recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden" on a motion for reconsideration, Lentz v. Mason, 32 F. Supp. 2d 733, 751 (D.N.J. 1999), the Court will not revisit those arguments here.

    14.  Finally, Yarris has no bearing on the Court's conclusion that Plaintiff failed to state a malicious abuse of process claim because he failed to allege facts sufficient to satisfy the "further acts" element of such a claim.  Plaintiff's statement – in his second motion for reconsideration after three efforts to amend his Complaint – that he is now "prepared to plead and prove a number of 'further acts'" in support of his claim, (Pl.'s Reply Br. 7), comes far too late, and is not a proper basis for a motion for reconsideration. See Resorts International, Inc. v. Greate Bay Hotel and Casino, Inc., 830 F. Supp. 826, 831 (D.N.J. 1992) ("Only dispositive factual matters and controlling decisions of law which were presented to the court but not considered on the original motion may be the subject of a motion for reconsideration.")

9

15. Because <u>Yarris</u> did not impose a "change in the controlling law" relating to the December 2004 Opinion and because Plaintiff has failed to demonstrate "the need to correct a clear error of law or fact or to prevent manifest injustice," <u>Max's Seafood Café</u>, 176 F.3d at 677, the Court will deny his motion for reconsideration.

**June 26, 2008**           **s/ Jerome B. Simandle**
Date                        JEROME B. SIMANDLE
                            U.S. District Judge