UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____
                            :
CLAUS PETER SPETH,          :
                            :
          Plaintiff,        :
                            :
     v.                     :      HON. JEROME B. SIMANDLE
                            :
ROBERT GOODE, GEETHA        :      Civil Action
NATARAJAN, RICHARD T. CARLEY, :    No. 95-0264 (JBS)
MARSETTA LEE, JOHN/JANE DOE, :
AND ATTORNEY GENERAL OF THE :
STATE OF NEW JERSEY         :      OPINION
                            :
          Defendants.       :
                            :
_____
```

APPEARANCES:

Fredric J. Gross, Esq.
FREDRIC J. GROSS LAW FIRM
7 East Kings Highway
Mount Ephraim, NJ 08059
     Attorney for Plaintiff

Paula T. Dow
Attorney General of New Jersey
     By: Joseph M. Micheletti, D.A.G.
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, NJ 08625
     Attorney for Defendants

**SIMANDLE**, District Judge:

## I.  INTRODUCTION

     This case involving Plaintiff, Dr. Speth, and his
eligibility to be a State Medical Examiner, is based on events
going back to 1991.  The Court stayed the claims in this case and
closed the docket while various state proceedings were pending,

but reopened the docket in 2007 based on Plaintiff's representation that the state proceedings had been terminated by a consent decree.  The matter is now before the Court on Defendants' motion to dismiss, in support of which Defendants argue that the remaining claims are either still appropriately stayed despite the consent decree, or else moot, and separately that they are barred by the statute of limitations [Docket Item 82].  For the reasons explained below, the Court will dismiss those claims accruing before January 5, 1993, lift the stay with respect to Counts II and III, and dismiss the claims other than Counts II and III as abandoned.[1]

## II.  BACKGROUND

This controversy began in 1991, and the entire history of the dispute will not be recounted here.  In 1991, one of the defendants, Robert Goode, then New Jersey State Medical Examiner, began an investigation of Plaintiff Claus P. Speth, then Gloucester County Medical Examiner.  See Speth v. Goode, No. 95-

_____

[1]  Plaintiff's opposition to the motion to dismiss also contains a crossmotion for various discovery sanctions.  But the motion was improperly filed.  Plaintiff has not yet complied with the docket clerk's instruction to separately file the crossmotion.  The separate filing of crossmotions upon the electronic docket is required to properly place the item on the Court's calendar, to give adequate notice when using the electronic filing system, and to permit the Court to efficiently manage its docket, such as by referring some types of motions to the Magistrate Judges.  Until such time as the crossmotion is properly filed, it will not be heard.

cv-264, Slip. Op. at 2 (D.N.J. Apr. 28, 1995). The investigation resulted in a 117-page report, the "Goode Report," identifying numerous deficiencies with Plaintiff's conduct as a medical examiner.

Because of the information collected in the Goode Report, on April 10, 1992, Goode suspended Plaintiff from practice within the State Medical Examiner System for a period of one year, and required him to take remedial steps prior to seeking reinstatement. Plaintiff did not complete these steps because, he claims, Defendant Natarajan — another official in the state office — refused to schedule the training. The creation and distribution of the Goode Report, Plaintiff's suspension from medical examiner practice, and the refusal to permit Plaintiff to complete the remedial training constitute the alleged conduct from which the claims currently under review arise.

**A.   Three State Proceedings and the Federal Case**

The present motion involves the interaction between various state proceedings and this case. The first proceeding is the state's administrative proceeding involving Plaintiff's medical examiner eligibility. Plaintiff appealed his eligibility status as Medical Examiner to the Office of Administrative Law ("OAL"), moving for emergent relief which was denied. [Docket Item 50, "Foster Aff., Ex-E".] On December 5, 1994, before the merits of

3

the claim could be reached, Plaintiff voluntarily withdrew his appeal.  [Id., "Foster Aff., Ex-F."]

The second proceeding is this federal suit, which Plaintiff brought on January 5, 1995 based on, among other things, his allegation that Defendants improperly denied him his medical examiner eligibility and failed to permit him to complete the requirements for restoration of his eligibility to be a state medical examiner.

A third proceeding is Plaintiff's criminal case.  On October 5, 1995, Plaintiff was indicted for witness tampering during a criminal investigation of an autopsy he had performed in private practice in 1993.  He was convicted in 1997.   As the result of a stay entered in the federal case because of the criminal proceedings on the witness tampering charge, the federal case was inactive until the state criminal proceedings concluded on October 3, 2003.

Finally, there was a fourth proceeding, a state administrative proceeding regarding Plaintiff's medical license. On February 24, 1998, the State Board of Medical Examiners filed a Complaint seeking to suspend Plaintiff's medical license as a result of his criminal conviction.  On June 10, 1998, Plaintiff voluntarily surrendered the medical license while the appeals of his criminal conviction were pending.  When, in 2003, Plaintiff had exhausted his criminal appeals, he sought reinstatement of

his license.

### B.  Stay of Federal Case

Both the medical examiner eligibility proceedings from which Plaintiff withdrew and the medical license proceedings he reinstated in 2003 were ongoing when Plaintiff's case in this Court was first reopened on November 10, 2003.  After dismissing many of Plaintiff's claims on the merits, the Court entered a stay regarding the remaining claims because of the pending state proceedings.  The claims were stayed "pending conclusion of state administrative and appellate judicial remedies to restore such eligibility and medical licensure."  See Speth v. Goode, No. 95-cv-264, Slip. Op. at 33 (D.N.J. Dec. 29, 2004).

The Court found that, for Younger abstention purposes, an administrative proceeding is "pending" when the state proceeding was terminated prematurely, or the litigant failed to appeal. Because important state interests were implicated by the medical examiner eligibility procedure, and there was no suggestion that Plaintiff could not have presented the equitable issues in those proceedings, the Court found Younger abstention to be appropriate.

With regard to the damages claims, for which the application of Younger is less clear, the Court found a stay to be appropriate because of issues that needed to be decided in the state proceedings:

5

> The issue of whether and in what amount
> damages would be appropriate cannot be
> determined until a decision by the state
> administrative tribunal and courts has been
> rendered on the issue of whether Plaintiff's
> medical examiner privileges were properly
> suspended.

Speth v. Goode, No. 95-cv-264, Slip. Op. at 32 (D.N.J. Dec. 29, 2004). Thus, the claims for equitable relief were dismissed and the damages claims were stayed pending resolution of the state proceedings.

The stayed claims are six counts: Count II & III - § 1983 due process and equal protection claims based on the restrictions placed on Plaintiff's eligibility to be a state medical examiner and the failure to allow him to complete the required training; Count V - a claim alleging abuse of office under color of state law related to unspecified conduct; Count VI - a claim alleging tortious interference with Dr. Speth's prospective economic advantage related to unspecified conduct; Count VIII - a claim alleging tortious interference with exercise of New Jersey constitutional right to exercise his trade related to unspecified conduct; and Count IX - a claim alleging that Defendants equitably defrauded Plaintiff by dissuading him from contesting accusations in the Goode Report, giving false assurances.

On June 19, 2007, the Court reopened the docket for further proceedings based on Plaintiff's unopposed motion asserting that no state proceedings are still pending because he concluded the

state litigation on January 12, 2006, by entering a consent order settlement with the New Jersey Board of Medical Examiners.  The consent order relates to the February 24, 1998 suspension of Plaintiff's medical license as a result of his criminal conviction.  In January 2006, Plaintiff and the Board of Medical Examiners amicably settled the matter by agreeing to reinstate the medical license subject to a probationary period and limited to forensic medicine only.  According to Plaintiff, he reinstated the license to "retired" status (Speth Decl. ¶ 4), which makes him ineligible to be a State Medical Examiner.  Therefore, Plaintiff maintains, the state proceedings with respect to his medical license are settled, and his medical examiner eligibility is mooted, and therefore those proceedings should no longer be considered pending and the stay should be lifted.

Defendants make two arguments in their motion to dismiss. First, they argue that either the consent order mooted Plaintiff's claims with respect the medical examiner eligibility by settling his claims, or it failed to conclude the state proceedings with respect to examiner eligibility because it did not settle his claims and therefore the stay should remain; they argue that it cannot have both concluded the state proceedings and also preserved the damages claims.  Second, they argue that the claims arising out of the denial of medical examiner eligibility are barred by the applicable statute of limitations.

III.   DISCUSSION

   A.   Statute of Limitations

      Defendants argue that Plaintiff's § 1983 claims are barred
by the applicable two year statute of limitations in N.J. Stat.
Ann. § 2A:14-2.  Plaintiff agrees that this is the applicable
statute, but maintains that while the initial suspension of his
examiner eligibility is not actionable, the subsequent refusal to
train him is, because it occurred within the statutory period.
(Pl.'s Br., at 8 (agreeing that "discrete actionable conduct
preceding January 5, 1993 is barred by limitations."))
Accordingly, there seems to be little for the Court to resolve
with respect to this issue.  The parties agree that the § 1983
claims arising out of the 1991 investigation and 1992 suspension
are barred.  But the conduct occurring after January 5, 1993 is
not time-barred.  Thus, if the alleged refusal to offer Plaintiff
the necessary training to meet the requirements for reinstatement
is sufficient to state a claim, that claim is not barred.


   B.   Lifting the Stay

      1.   The Complaint Generally

      The December 29, 2004 Opinion sets out at length the reasons
for the stay entered with respect to the six remaining claims in
this case.  In short, the Court felt compelled to stay the
damages claims because they would directly interfere with state

8

proceedings that would determine issues necessary for the Court to adjudicate the damages claims. Plaintiff stated in his motion to reopen the case that the state proceedings have concluded because his retired status makes any renewed attempt to challenge the suspension of his examiner's eligibility moot, and because the medical license proceedings were settled by the consent decree. The Court reopened the docket to permit argument on whether the stay should be lifted because the subject of the state proceedings had become moot.

Defendants then filed this motion to dismiss, in support of which they argue that either the consent order settled Plaintiff's damages claims related to his examiner eligibility, or else had no effect on the pending OAL proceedings, and therefore the claims should continue to be stayed. But Defendants misunderstand Plaintiff's argument because Defendants conflate the mootness of Plaintiff's examiner eligibility and the settlement of his damages claims. The Court sees no reason why the consent order would have made Plaintiff's damages claims moot; it is entirely possible for Plaintiff to have mooted the equitable relief he sought in the state proceedings by making himself ineligible for an examiner's license without foregoing the damages claims arising from the related conduct. The question ostensibly raised for this Court's determination by Plaintiff's argument is whether mooting the OAL proceeding alters

the propriety of the Court's stay.

Unfortunately, although Plaintiff's motion to reopen raises this issue, to the extent the parties even take clear positions on it, they fail to support those positions using arguments or precedent.  Instead, both parties simply relitigate the issues that this Court already decided in this case, that the state proceeding is considered pending because Plaintiff withdrew from it, and that a pending state proceeding is reason to stay a damages claim.

The fact that the parties barely take positions, much less provide legal arguments on the question of whether the stay should remain if the relief sought in the state proceedings is mooted, does not in itself prevent the Court from reviewing the propriety of its continued stay of the claims.  The stay is a result of this Court's inherent power to manage its docket, and the Court could attempt to address whether mooting the equitable relief makes the proceedings no longer pending, and whether a stay of the damages claims is still warranted, without the party's input on the relevant law.  But the parties have not even provided enough information about the remaining claims to permit the Court to answer these questions sua sponte, as it were.

In particular, it is unclear what facts would have to be determined with respect to some of the remaining damages claims. Plaintiff suggests in the motion to reopen and opposition to the

10

motion to dismiss that the remaining claims relate exclusively to the failure to train.  Plaintiff's opposition to the motion to dismiss argues that "damage claims flowing from the continuing refusal to allow him to meet the reinstatement conditions . . . remain unresolved.  Thus, even though service in the State Medical Examiner system is no longer in issue, nothing has mooted out the damages caused by defendants' continuing refusal to schedule the training which they require of Dr. Speth."  (Pl.'s Br., at 7.)  In an attempt to confirm that this failure to train claim was the only claim Plaintiff sought to reinstate, the Court wrote to the parties seeking clarification of whether Plaintiff sought also to proceed on Count V (abuse of office), Counts VI and VIII (tortious interference), and Count IX (equitable fraud). Plaintiff replied without referencing any of those counts specifically, stating that he seeks "to proceed to trial on his claim asserting a conspiracy by State officials to defame Plaintiff and to arbitrarily deprive him of professional engagements in the public and private sectors without affording him due process of law."  (Pl.'s Ltr., at 2.)  Aside from there being no conspiracy or defamation claims remaining in the Complaint, this statement is patently inconsistent with Plaintiff's statement that what remains unresolved is the damages claims regarding training, and does not assist the Court in determining what will have to be decided if these claims are

reinstated.

The Court cannot address these other claims because it is
not clear what conduct the remaining counts apply to.  When the
stay was originally entered with respect to these claims, it was
not important whether they referred to the conduct related to the
suspension of his examiner's eligibility, to conduct related to
his medical license suspension, or something else entirely, as
the claims were appropriately stayed insofar as they would, at a
minimum, depend on the propriety of the suspension of Plaintiff's
medical license in 1998, an issue being actively litigated.  But
now that the medical license issue has been settled and it is
clear that Plaintiff's examiner eligibility will never be
reinstated, the Court cannot assess whether the stay remains
appropriate until it becomes clear what facts the Court would
have to determine to adjudicate these claims.

Because the Plaintiff has not addressed the relevant legal
or factual issues necessary for this Court to assess the
propriety of the stay with respect to four of the remaining six
claims, on this motion, the Court rules out lifting the stay on
any claims other than Counts II and III, pertaining to § 1983
claims.  The Court will address only the two claims for which the
propriety of lifting the stay based on the events since 2004 is
justifiable from the record.

2.  § 1983 Claims

With respect to the § 1983 claims, Counts II and III, the Court finds that the stay should be lifted, because assuming for the sake of argument that the proceeding is still considered pending for Younger purposes and it was within this Court's power to continue the stay even though the proceedings are now moot — the questions the parties fail to take clear positions on — the Court would still find that the stay should be dissolved because these two claims would no longer interfere with these proceedings.

When this Court stayed these two damages claims, Plaintiff was asking for a judgment with respect to the process and fact of his initial suspension, and for damages through an indefinite period given the dispute over the validity of his medical license suspension.  The Court ruled that it could not address the damages claims until the question of Plaintiff's medical license eligibility had been determined, and the questions regarding the process and fact of his examiner eligibility suspension had been adjudicated in the state proceedings.

Two things have changed since that time.  First, Plaintiff concedes that the events occurring in 1992 are outside the scope of the statute of limitations.  Second, Plaintiff has stipulated in the consent decree to the lawfulness of the medical license suspension for a discrete period, thus removing the obstacle to

13

the calculation of damages presented by Plaintiff's uncertain medical license eligibility.  Because of these changes, the determination of the remaining damages claim does not require the resolution of any issue that would interfere with the OAL proceeding that is still arguably pending.  To resolve Plaintiff's claim with respect to the denial of training, the Court need not determine whether Plaintiff's initial suspension was lawful — the subject of the OAL proceedings — or whether Plaintiff could have been reinstated after 1998, since he has conceded he could not.  The Court would need only to determine whether Plaintiff did actually request the training and whether it was improperly denied.  Damages for the unlawful withholding of the training might turn on the question of whether the training would have led to reinstatement, but that question does not appear to depend on the issues the OAL was asked to decide, since no one's position in the OAL proceeding was that Plaintiff could have remained suspended even if he completed the requirements for eligibility.  Plaintiff can therefore pursue the separate claim regarding the refusal to train because it no longer threatens to interfere with any state proceedings.  The Court makes no statement regarding the merits, if any, of the remaining § 1983 claim for failure to train.

### 3.  Abandonment of other counts

With respect to the other four counts, the Court faces a choice.  It could permit the claims to remain on the docket, but stayed, such that if Plaintiff eventually decides to explain why they should be reinstated, they may spring to life unexpectedly. Or, the Court can dismiss the claims for failure to prosecute. For the reasons that follow, the Court will select the latter option.

Plaintiff's declaration in support of the motion to reopen does not discuss these claims (Speth Decl. ¶ 7); Plaintiff did not make any arguments opposing Defendants' motion to dismiss with respect to them; and, when given a gratuitous additional opportunity to explain whether Plaintiff sought to proceed on these counts [Docket Item 88, Letter Order], Plaintiff essentially replied "yes," without further elaboration, without referencing these counts and while apparently referring to other claims long ago dismissed or never present [Docket Item 89, Plaintiff's Response to Letter].  Therefore, the Court concludes that Plaintiff has abandoned the other counts.

The Court is mindful that such dismissal is not a step to be taken lightly.  Abandonment is presumed to occur in unusual circumstances, such as when an appellant's brief fails to address an issue on appeal.  See, e.g., Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993).  But dismissal is warranted because Plaintiff has been given multiple opportunities to explain to the Court why

these claims are now properly adjudicated, and has refused to do so.  Cf. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, (3d Cir. 1984) (discussing circumstance warranting dismissal when claims are dismissed for failure to comply with court orders).  Most recently, Plaintiff did not oppose Defendants' dismissal motion on these other claims, nor did Plaintiff's letter in response to the Court's specific inquiry make any argument as to them.  After fifteen years, it is not too much to expect Plaintiff to demonstrate why these claims may now proceed in this Court, yet Plaintiff is silent on the invitation to do so.  Defendants would be prejudiced by having these unexplained claims hanging over their heads, and the inevitable piecemeal litigation that permitting the future reinstatement of these claims would cause.  Therefore, all remaining counts other than Counts II and III will be dismissed as abandoned.

## IV.  CONCLUSION

The parties agree that the claims accruing in 1991 and 1992 are outside the scope of the § 1983 claims.  What remains of those claims, allegations regarding a refusal to offer the training required for Plaintiff's eligibility, would not interfere with any pending state proceedings, and therefore the stay on those claims is lifted.  With respect to the stay as to the other claims in the Complaint, the Plaintiff has not sought

16

to reinstate these claims, despite having been given the opportunity to seek reinstatement.  Those claims will not be reinstated in the future because it would promote more piecemeal litigation of this 15-year-old docket.  The litigation schedule will be set so that this remaining claim can be prepared for trial to commence October 18, 2010.  The accompanying Order will be entered.


**June 23, 2010**                           **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            United States District Judge

17