IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

CLAUS PETER SPETH,

                Plaintiff,

     v.

ROBERT GOODE, et al.,

               Defendants.

HON. JEROME B. SIMANDLE

Civil Action
No. 95-0264 (JBS/AMD)

**OPINION**

---

APPEARANCES:

Fredric J. Gross, Esq.
FREDRIC J. GROSS LAW FIRM
7 East Kings Highway
Mount Ephraim, NJ 08059
    Attorney for Plaintiff

William P. Flahive, Esq.
24 Arnett Avenue
Suite 103
Lambertville, NJ 08530
    Attorney for Defendants

**SIMANDLE**, District Judge:

## I.   INTRODUCTION

This matter is before the Court on Plaintiff's Rule 56(d)(2) motion for partial summary judgment [Docket Item 104]. Plaintiff seeks a judgment as to Defendants' liability for two counts of the Second Amended Complaint related to denial of training he needed to regain his eligibility to serve in the New Jersey medical examiner system:  Count II (due process) and Count

III (equal protection).  There are two components of both counts.
The first component involves the State Medical Examiner's
decision to declare Plaintiff ineligible for service within the
state examiner system and imposition of requirements for
regaining eligibility including remedial training.  The second
component, the subject of this motion, is the State's alleged
refusal to schedule the remedial training.[1]  The principal issues
are whether Plaintiff had a constitutionally protected property
or liberty interest that was denied without due process when he
was allegedly denied the training necessary to regain eligibility
to participate in the state medical examiner system, and whether
the denial of that training was so arbitrary as to violate the
Equal Protection Clause.  The Court heard oral argument on
October 29, 2010.


**II.  BACKGROUND**

     The facts of this case, including its complicated procedural
history, are set forth in this Court's Opinions of April 28, 1995
[Docket Item 16], December 29, 2004 [Docket Item 53], and June
23, 2010 [Docket Item 90].  For the purposes of this motion, the
Court focuses on the facts as relevant to Counts II and III.

---

     [1]  The claims have been separated in this way because the
first component relates to a state proceeding that Plaintiff
initiated; claims related to issues in that proceeding were
stayed, and have not yet been reinstated.

Under New Jersey law, county medical examiners are appointed
by the county for five-year terms but subject to requirements of
training or experience set by the State Medical Examiner by rule
or regulation.  N.J. Stat. Ann. § 52:17B-83.  The State Medical
Examiner is also in charge of authorizing "competent forensic
pathologists" to conduct autopsies under the auspices of the
Medical Examiner System.  N.J. Stat. Ann. § 52:17B-88.  The only
individuals permitted to perform official autopsies under §
52:17B-88 are county medical examiners, deputy or assistant
county medical examiners, or designated forensic pathologists.
N.J. Admin. Code § 13:49-7.1(d).

In February 1992, Plaintiff withdrew himself from
consideration for reappointment as the Gloucester County Medical
Examiner upon learning he would not win a reappointment vote.
(Compl. ¶ 124.)  Plaintiff believed he would not be reappointed
because the State Medical Examiner, Dr. Goode, had informed the
County of a lengthy report that Dr. Goode had composed
criticizing Plaintiff's suitability as a medical examiner.  (Id.
¶¶ 120-124.)  Shortly thereafter, on April 10, 1992, Dr. Goode
notified Dr. Speth that based on the findings of the report, Dr.
Speth's "eligibility to serve as County Medical Examiner in the
State of New Jersey is withdrawn," and his "eligibility to
conduct death investigations under the auspices of the Medical
Examiner System in New Jersey, and to serve as a designated

3

pathologist are suspended for a period of 1 year effective this date." (Gross Decl. Ex. A.)  The letter states that the privileges will be reinstated after a one-year suspension if Dr. Speth completes "a remedial course in the Laws, Rules and Regulations to be held by the State Medical Examiner" and completes "a 7 day internship under the supervision of the New Jersey State Medical Examiner Office."  (Id.)

The requirements imposed by Dr. Goode's letter are mirrored in the regulations promulgated pursuant to the State Medical Examiner's statutory obligation to set requirements of training or experience for medical examiners.  N.J. Admin. Code § 13:49-7.1; N.J. Stat. Ann. § 52:17B-83.  The rules require that county medical examiners and their assistants, as well as designated forensic pathologists, must be fully licensed physicians "of recognized ability and good standing in [their] community," and have completed certain training.  § 13:49-7.1. The training includes a certain number of hours of basic education; a course conducted by the Office of the State Medical Examiner on the laws, rules and regulations relating to the New Jersey Medical Examiner System; and seven days of internship training at the New Jersey State Medical Examiner Office.  § 13:49-7.1(a).  The regulations also provide for continuing education requirements, which include "any other necessary training."  § 13:49-7.1(c).  The administrative code provides

that a declaration of ineligibility for failure to meet the
requirements of § 13:49-7.1 is to be followed by a hearing. §
13:49-8.1(a). This requirement applies only to current county
medical examiners, their assistants, designated forensic
pathologists, and candidates for those positions. Id.

Plaintiff challenged the declaration of ineligibility and
its reinstatement requirements in a hearing before New Jersey's
Office of Administrative Law on March 7, 1994. He withdrew the
appeal on December 5, 1994 before a final determination was made.
Plaintiff does not allege that he sought appointment as county
medical examiner, assistant county medical examiner, or
designated forensic pathologist after 1992. The only
representations that have been made to the Court are that he did
not seek such positions. (Compl. ¶ 133; Amended Compl. ¶ 134;
Def.'s Ex. G ("Hrg. Tr. of April 20, 1995") at 19-23.)

Dr. Speth did, however, eventually request the training
necessary to become eligible for those positions. (Speth Decl.
of Sept. 2, 2010 ¶ 3.) In late May 1995, after the original
complaint in this federal action was filed, and over two years
after the one-year suspension, Dr. Speth's attorney asked that
the training discussed in Dr. Goode's letter be scheduled (Pl.'s
Statement of Material Facts ¶ 6-8). In mid-July 1995, Dr.
Speth's attorney sent the attorney for the State a followup
letter stating, "I assume that your continuing failure to offer

dates for the training specified in the letter of ineligibility reflects your acquiescence in my understanding that the course requirement has been waived." (Id. ¶ 8.)  Though not specifically alleged in the Second Amended Complaint nor averred by Dr. Speth in his various affidavits, Plaintiff's counsel maintains that Plaintiff sought the training in order to regain his eligibility because the fact of his ineligibility was harmful to his reputation in his private practice.  (Def.'s Ex. G at 20; Speth Decl. of Oct. 1, 2010 ¶ 16.)

The training was never scheduled.[2]  On October 5, 1995, five months after he first indicated his interest in the training, the Essex County Prosecutor's Office indicted Plaintiff for criminal conduct related to an autopsy he performed in his private capacity in 1993, and for interfering with the official investigation of that conduct.  Speth v. Goode, Civil No. 95-264, Slip Op. at 11 (D.N.J. December 29, 2004).  The indictment featured three counts: third degree tampering with a witness, based on Dr. Speth's attempt in April 1994 to persuade Defendant Natarajan (the new State Medical Examiner) to withhold testimony or physical evidence in the criminal proceeding; fourth degree

---

[2]  In response to the letter from Dr. Speth's attorney, on or about August 14, 1995, DAG Crowley responded that, "The defendants are attempting to schedule this training for the early part of November." (Id. ¶ 9.)  Plaintiff argues that this letter is not admissible evidence of whether the state was in fact scheduling training for November (because it is double hearsay).

tampering with physical evidence based on his conduct during a
1993 medical examination; and fourth degree false swearing based
on his report from the 1993 examination.  Id.  Plaintiff was
convicted of third degree tampering with a witness on October 28,
1997.  Id.  The other two charges resulted in a deadlocked jury
and were eventually dismissed upon Plaintiff's formal demand for
a speedy retrial.  Id.  The claims at issue in this motion were
added by amendment in 2004, after the stay of the case resulting
from Plaintiff's criminal proceedings was lifted.

Plaintiff maintains that he had a right not to be deprived
without due process of the training necessary to regain his
eligibility, and that doing so for no legitimate reason violated
the Equal Protection Clause.  Defendants argue that since
Plaintiff did not request training until two years after the
scheduled date, which was while he was under criminal
investigation for conduct related to work as a pathologist,
Defendants had no constitutional obligation to offer the
training, and that they had a rational basis for denying the
training.  As set forth below, the Court agrees with Defendants
that Plaintiff has not established that he had a protected
property or liberty interest in the training or in his
eligibility to serve in the state examiner system, and Plaintiff
has not established that the undisputed facts show that the State

had no rational basis for denying the training.[3]


## III.  DISCUSSION

### A.  Standard of Review

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment will not be denied based on mere allegations or denials in the pleadings; instead, some evidence must be produced to support a material fact.  U.S. v. Premises Known as 717 S. Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993). However, the court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party.  Hunt v. Cromartie, 526 U.S. 541, 552 (1999).

---

[3]  Defendants also rely on arguments made in their now-withdrawn cross-motion for summary judgment, including assertions of the defense of laches and dismissal based on the statute of limitations.  But since the Court finds that Plaintiff's motion should be denied because Plaintiff has not adduced undisputed facts to satisfy his own burdens, and given the ambiguity created by relying on arguments in a withdrawn cross-motion, the Court does not reach Defendant's affirmative defenses.  The Court will separately address the Statute of Limitations issue as it is presented in Defendants' recent motion for summary judgment [Docket Item 131].

**B.  Procedural Due Process**

Procedural due process requires notice and an opportunity
to be heard before a person is deprived of a protected interest,
except for "extraordinary situations where some valid
governmental interest is at stake that justifies postponing the
hearing until after the event."  Board of Regents of State
Colleges v. Roth, 408 U.S. 564, 570 n.7 (1972).  Plaintiff claims
that the State's refusal to schedule the remedial training
without explanation or opportunity to challenge the decision
deprived him of both protected property and liberty interests.
The principal question the Court must answer in assessing
Plaintiff's due process claim is whether Plaintiff had a
protected interest in the training necessary to reinstate his
eligibility for discretionary appointment to a handful of
positions, which positions he does not aver that he sought.

Plaintiff claims a protected interest in the training
necessary to regain his eligibility, arguing that the State
created a property interest in the training by saying they would
offer it to him if he wished to re-enter the New Jersey Medical
Examiner System, and that he had a liberty interest in the
training because it affected his professional reputation.  As
explained below, Plaintiff has not adduced sufficient evidence to
support either proposition.  And the analysis does not change if

9

the Court instead analyzes Plaintiff's claim as asserting a
protected interest in the eligibility for which the training was
necessary.

        1.  <u>Property Interest</u>

     Property interests "are created and their dimensions are
defined by existing rules or understandings that stem from an
independent source such as state law-rules or understandings that
secure certain benefits and that support claims of entitlement to
those benefits."  Roth, 408 U.S. at 577.  Such property interests
may extend well-beyond physical property, and may include such
intangible benefits as a license essential to pursuing an
occupation or livelihood.  <u>Cleveland v. United States</u>, 531 U.S.
12, 25 n.4 (2000) (noting that, in some contexts, "individuals
have constitutionally protected property interests in
state-issued licenses essential to pursuing an occupation or
livelihood").  Not every statute or informal understanding
securing a benefit creates a protected property interest.
Federal law determines whether an interest created by state law
"rises to the level of a 'legitimate claim of entitlement'
protected by the Due Process Clause."  <u>Memphis Light, Gas & Water
Division v. Craft</u>, 436 U.S. 1, 9 (1978) (quoting <u>Roth</u>, 408 U.S.
at 577).

     Generally, a federally-protected property interest is

created when an "individual entitlement grounded in state law . .
. cannot be removed except for cause." Logan v. Zimmerman Brush
Co., 455 U.S. 422, 430 (1982) (internal citation omitted).  For
example, in Brady v. Gebbie, 859 F.2d 1543 (9th Cir. 1988), the
Ninth Circuit Court of Appeals held that a medical examiner had
no protected property interest in his position because he could
be removed without cause.  When the benefit in question is one
not yet obtained, the corollary to whether it could be removed
without cause is whether "state law limits the exercise of
discretion by the state official responsible for conferring the
benefit" in such a way as to create an entitlement rather than a
mere expectation or contract right.  See Midnight Sessions, Ltd.
v. City of Philadelphia, 945 F.2d 667, 679 (3d Cir. 1991)
(internal citation omitted), overruled on other grounds by United
Artists Theatre Circuit, Inc. v. Township of Warrington, PA, 316
F.3d 392 (3d Cir. 2003).  Although the Supreme Court has yet to
decide the question, the Courts of Appeals are unanimous in
holding that an applicant for a state benefit may have a
protected interest in the benefit subject to due process
protections, even though the denial of a prospective benefit is
not a deprivation in the ordinary sense of the word.  See Kapps
v. Wing, 404 F.3d 105, 115 (2d Cir. 2005) ("Every regional
circuit to address the question . . . has concluded that
applicants for benefits, no less than benefits recipients, may

11

possess a property interest in the receipt of public welfare entitlements."); Kelly v. Railroad Ret. Bd., 625 F.2d 486, 489-90 (3d Cir. 1980).

Plaintiff claims an entitlement to the training necessary to make him eligible for appointment as a county medical examiner or designation as an authorized forensic pathologist, because Dr. Goode's letter created an understanding that this training would be offered to him.  But the training itself is not a benefit; it is a requirement to be met in order to obtain a benefit.  Even if the training were construed as a benefit, the only way it is not simply a gratuitous benefit — rather than an entitlement — is if Plaintiff had some protected interest in eligibility which made the offer of training non-discretionary.  See Midnight Sessions, 945 F.2d at 679.  If it were the case that Plaintiff had a protected interest in his eligibility, it would follow that he could not be denied the training necessary for that eligibility without due process, since that would simply be a back door to denying the eligibility without due process.  This seems to be the position taken by Plaintiff's counsel in his reply brief in this matter (Pl.'s Reply Br. 6 ("The protected interest flowed inexorably from Defendant Goode's making the withheld training an unavoidable requirement for restoring eligibility.")).  The property-interest version of the claim therefore turns on whether Plaintiff has a protected property interest in the eligibility.

The New Jersey regulatory structure requires notice and a hearing before a declaration of ineligibility becomes final.  § 13:49-8.1(a).  That the state provides a process for a declaration of ineligibility does not, in itself, grant Plaintiff a constitutional due process right.  Olim v. Wakinekona, 461 U.S. 238, 250 (1983) (holding that there was no right to constitutional due process when the ultimate determination was entirely discretionary, even though the state had an established process for that determination).  Such process can create a federally-recognized entitlement when that process is to examine whether certain statutory conditions have been met — in other words, when the state prevents removal of the benefit without cause.  Thus, to the extent that eligibility itself is a benefit cognizable as property, and to the extent that this process applies to Plaintiff, the state law implies the requisite degree of entitlement.

However, as explained below, Plaintiff's eligibility is not a benefit in itself, and the process outlined in § 13:49-8.1(a) does not apply to him.

Eligibility can be a benefit in itself that cannot be denied without due process, but only when its relationship to ultimate employment is much stronger than is the case with Dr. Speth.  In Stana v. School Dist. of Pittsburgh, 775 F.2d 122 (3d Cir. 1985), the Third Circuit Court of Appeals found that there had been a

violation of the procedural due process rights of a school teacher who had been functionally removed from the certified eligibility list on the basis of a negative recommendation, without notice to her or an opportunity for her to be heard.  Id. at 126-27.  The Court in Stana distinguished that case from other "eligibility list" cases in which eligibility only made an employee a candidate for a discretionary appointment "because here a place on the eligibility list was the central factor in the School District's communicated policy to award teaching positions."  Id. at 127 n.3.  In other words, the plaintiff in Stana had a property interest in abstract eligibility only because that eligibility was so strongly connected to her actual employment with that employer.  "Thus, the primary factor for determining whether a position on an eligibility list is a 'legitimate entitlement' is whether the employer has a communicated general policy of hiring people off the list without further consideration of their candidacy or discretion."  McCool v. City of Philadelphia, 494 F. Supp. 2d 307, 323-24 (E.D. Pa. 2007).  Unlike that case, the effect of Plaintiff's ineligibility was only to affect the entirely discretionary decisions of others.  Dr. Speth's claim is therefore more like the cases finding no property interest in eligibility that were distinguished by Stana.

Additionally, unlike the plaintiff in Stana who was seeking

and was a candidate for employment as a teacher, Plaintiff has
not shown that he was seeking employment in the state examiner
system.  Instead, he is claiming to have an interest in the
abstract declaration of eligibility to do so.  This undermines
the contention that eligibility was a property benefit, and also
undermines his claim to entitlement because New Jersey law only
protects the rights of candidates for the positions, and does not
affect the rights of those only seeking eligibility because it is
useful for other reasons. § 13:49-8.1(a).

In summary, the only way Plaintiff could have a property
interest in the training is if it derived from his property
interest in eligibility.  According to <u>Stana</u>, this property
interest, in turn, must derive from an interest in the ultimate
benefit at issue:  employment in the state examiner system.
Since such employment is discretionary, Plaintiff had no property
interest in eligibility.  McCool, 494 F. Supp. 2d at 323-24.
Alternatively, the Court independently finds that Plaintiff has
not established that he had a protected property interest in the
training because Plaintiff did not seek to be appointed as a
county medical examiner or designated forensic pathologist.  In
the absence of his candidacy for such positions, neither the
state regulations nor the terms of Dr. Goode's letter could
create any entitlement.  For these two reasons, on this record,
Plaintiff has not established a protected property interest.  To

the extent that Plaintiff's interest in training to regain eligibility is about the effect of his ineligibility on his reputation, the issue is analyzed as a liberty interest as explained below.

### 2.  Liberty Interest

The liberty interests protected by the Fourteenth Amendment include "not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life . . . and generally to enjoy those privileges long recognized as essential to the orderly pursuit of happiness by free men." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 572 (1972).  While liberty interests are not implicated in the denial of any particular government job, when the government excludes an individual from eligibility for a particular type of professional employment, liberty interests are implicated.  Id.; Piecknick v. Commonwealth of Pennsylvania, 36 F.3d 1250, 1259 (3d Cir. 1994).  For example, although the teacher hiring process is discretionary, a qualified teacher may nevertheless have a due process right to a teaching certificate issued by the state because it implicates the teacher's liberty interest in pursuing an occupation.  Becker v. Illinois Real Estate Admin. and Disciplinary Bd., 884 F.2d 955, 957 (7th Cir. 1989); Herz v. Degnan, 648 F.2d 201, 208 (3d Cir. 1981) (holding

that individual had protected interest in license to practice as
a psychologist).

An individual's liberty interests are similarly implicated
if he is removed from a particular government position in such a
way as to have the effect of excluding him from an occupation
because of the damage done to the individual's professional
reputation.  Such an employment action can implicate a liberty
interest if it is "based on a charge against the individual that
might seriously damage his standing and associations in the
community" or "imposes on him a stigma of other disability that
forecloses his freedom to take advantage of other employment
opportunities."  Robb v. City of Philadelphia, 733 F.2d 286,
292-93 (3d Cir. 1984).

Neither of these two ways in which a government might
deprive an individual of his liberty to pursue an occupation fits
the evidence Plaintiff has adduced.  The scope of the legally-
mandated exclusion in this case that results from the withholding
of training is exclusion from employment as a county medical
examiner (or assistant) and designation as an authorized forensic
pathologist who can perform autopsies within the state examiner
system.  This is much closer to exclusion from a particular
position than exclusion from an entire occupation.  Plaintiff was
not legally excluded from performing private death
investigations, or any other job as a forensic pathologist, much

17

less was he excluded from the many possible jobs open to him as a
licensed physician.  Plaintiff's counsel contends that Dr.
Speth's eligibility was legally necessary to receive other
benefits, including "per diems, consultations, and substitute
services," but there is no support for this in the record and
this argument has no basis in New Jersey law that the Court is
aware of.  Moreover, even if the exclusion were broad-based
enough to implicate Plaintiff's liberty interests, there is the
separate problem that Plaintiff has not averred that he sought
the positions or designation for which he was ineligible without
the training.

Plaintiff's claim fares no better when analyzed as a
reputation damage claim.  First, Plaintiff's motion papers adduce
no evidence to support this claim.  The Verified Second Amended
Complaint alleges that Defendants "published numerous assertions
that plaintiff was professionally incompetent," including the
ineligibility letter (Compl. ¶¶ 12-13).  But beyond that short
vague statement (which is not even identified as a material fact
in Plaintiff's Statement pursuant to Local Civil Rule 56.1), the
parts of the record adduced by Plaintiff for this motion make no
reference to publication, reputation, or any of the other facts
necessary to entitle Plaintiff to summary judgment on this type
of claim.  This is a problem not only because Plaintiff must
identify for the Court the relevant evidence, see Comose v. New

Jersey Transit Rail Operations, Inc., No. 98-2345, 2000 WL
33258658, at *1 (D.N.J. Oct. 6, 2000), but also because Defendant
must be given the opportunity to dispute those facts as Plaintiff
deems material. See Kramer v. Exxon Mobil Corp., No. 07-0436,
2009 WL 1544690, at  *5 (D.N.J. June 3, 2009).

     Second, the Court's attempt to identify parts of the record
that might plausibly support this claim finds no support for two
critical propositions: that the denial of training is what
prevented Dr. Speth from regaining eligibility and that Plaintiff
was shut out of a broad range of employment opportunities.  The
first showing is necessary since otherwise there is no mechanism
by which the denial of training itself harmed Plaintiff's
reputation.  The second is necessary because harm to professional
reputation is not a deprivation of liberty until it has the same
effect as legally excluding an individual from pursuing his
occupation.  See Paul v. Davis, 424 U.S. 693, 701 (1976); Roth,
408 U.S. at 574 n.13 ("Mere proof, for example, that his record
of nonretention in one job, taken alone, might make him somewhat
less attractive to some other employers would hardly establish
the kind of foreclosure of opportunities amounting to a
deprivation of liberty.").  As best the Court can tell from its
review of the record without the aid of a relevant 56.1 Statement
or relevant argument by the parties, Plaintiff's complaints about
damage to his reputation do not even establish that he lost a

single job opportunity, much less that the stigma was so severe
as to virtually exclude him from an occupation.[4]

Plaintiff has not established that the State's refusal to
train him interfered with his occupational liberty so as to be a
deprivation of a liberty interest.  The Court does not reach the
question of what kind of process would have been necessary and
whether that process was actually provided because Plaintiff has
not shown that he was deprived of a protected liberty interest.[5]

---

[4]  All of this analysis is also assuming, for the sake of
argument, that the reputation-damage type of due process action
even applies to the denial of the means to regain reputation.
But a state action that damages one's reputation in the way
discussed in Robb v. City of Philadelphia, 733 F.2d 286, 292-93
(3d Cir. 1984), and a state action that merely prevents Plaintiff
from using state resources to restore that damaged reputation are
quite different.  While firing or a refusal to rehire, coupled
with a defamatory statement, can entitle an individual to due
process, state action in the absence of such employment actions
does not require due process just because it harms an
individual's reputation.  See Paul v. Davis, 424 U.S. 693, 706-09
(1976) (noting that the Supreme Court "has never held that the
mere defamation of an individual, whether by branding him
disloyal or otherwise, was sufficient to invoke the guarantees of
procedural due process absent an accompanying loss of government
employment").

[5]  The Court does not reach an additional issue raised by
Defendants regarding whether Plaintiff met the requirement of
"recognized ability and good standing in his or her community" as
of the date when Defendants first refused to schedule the
training, and after the October 1995 indictment.  N.J. Admin.
Code § 13:49-7.1.  This requirement of good standing limits every
form of eligibility under the state framework.  See N.J. Admin.
Code § 13:49-7.1(a), (d).  The issue of whether Plaintiff would
ultimately have succeeded in regaining eligibility does not raise
problems of mootness or standing.  See Fuentes v. Shevin, 407
U.S. 67, 87 (1972) ("To one who protests against the taking of
his property without due process of law, it is no answer to say
that in his particular case due process of law would have led to

20

### C.  Equal Protection Claim

Plaintiff's Complaint and original motion argued that he was arbitrarily singled out for denial of training in violation of the Equal Protection Clause of the Fourteenth Amendment.  (Second Am. Compl. ¶ 31.)  Such a claim of arbitrary official mistreatment requires Plaintiff to establish that he "has been intentionally treated differently from others similarly situated and . . . there is no rational basis for the difference in treatment."  Village of Willowbrook v. Olech, 528 U.S. 562, 565 (2000).

In a supplemental filing, however, Plaintiff attempts to avoid the application of Olech's test by arguing that he was singled out for his exercise of First Amendment rights, placing a higher burden on Defendants in this equal protection claim.  But Plaintiff has failed to adduce any evidence upon which a reasonable fact-finder could conclude that Plaintiff was singled

------

the same result because he had no adequate defense upon the merits.") (quoting Coe v. Armour Fertilizer Works, 237 U.S. 413, 424 (1915)).  But it may limit liability if Plaintiff were eventually able to demonstrate a protected interest.  See Stana, 775 F.2d at 131 ("[T]he factfinder will have to determine whether, if Stana had been given notice and the opportunity to present a response to the adverse teaching report, she would have been placed in a public school teaching position.  Even if she cannot show actual damages, she is entitled at least to nominal damages for the denial of procedural due process."); Carey v. Piphus, 435 U.S. 247, 266-67 (1978) ("[I]f, upon remand, the District Court determines that respondents' suspensions were justified, respondents nevertheless will be entitled to recover nominal damages not to exceed one dollar from petitioners.").

out based on his exercise of First Amendment rights.  Plaintiff
points to a section of the letter written in response to his
request for training, in which the attorney for the State wrote,
"if Dr. Speth completes the training found in the ineligibility
letter as part of a global settlement in this case . . .
Defendants will waive the one year probationary period."  (Gross
Decl. Ex. D.)  Plaintiff reads this to be conditioning the offer
of the training upon his withdrawing his legal action, which he
contends he has a First Amendment right to file.  But the very
next sentence in the August 14 letter states, "if a settlement is
not reached in this case, the defendants will reinstate Dr. Speth
if he [completes] all of the requirements found in the
Ineligibility letter."  (Id.)  Plaintiff also argues that when
the attorney expressed concern that Dr. Speth might "use this
training . . . to build some kind of case against the State
Medical Examiner's Office," that he was revealing that the State
was withholding the training because of Plaintiff's filing of the
present lawsuit or potential future lawsuits.  (Id.)  But, again,
the very next sentence dispels any such interpretation, stating,
"Therefore, the defendants reserve the right to cease the
training . . . if Dr. Speth chooses not to comply with the
requirements of the training, but uses this opportunity for some
other purpose."  (Id.)  Plaintiff's use of out-of-context quotes
to attempt to change the applicable equal protection standard is

therefore rejected, and the Court will analyze the case under
Olech.

Plaintiff has not shown an entitlement to summary judgment
on this claim because Plaintiff has not met either prong of
Olech.  In support of the proposition that Plaintiff was
similarly-situated to individuals who were treated differently,
Plaintiff points to his averment that between April 1993 and
October 1995, at least one person entered into the State Medical
Examiner system and therefore underwent training pursuant to the
regulations.  (Speth Decl. ¶ 15.)  Unlike that individual,
however, Plaintiff was not actively seeking to be a candidate for
any of the positions for which training was relevant.  The
manifest purpose of offering the training is to make sure that
doctors serving the state are adequately prepared for their
duties.  See N.J. Admin. Code § 13:49-7.1.  Plaintiff apparently
sought the training, not because he sought these duties, but in
order to overcome the mark on his reputation caused by his
ineligibility.  Plaintiff would only have been similarly-situated
with such an individual if he had declared an interest in re-
entering the state examiner system.  Indeed, Dr. Goode's letter
to Plaintiff plainly stated that "if it is your wish to re-enter
the New Jersey Medical Examiner System, your eligibility . . .
may be reinstated after completion of a remedial course."  (Gross
Decl. Ex. A.)  Even if Plaintiff's request for training in May

23

1995 were interpreted as a desire to re-enter the New Jersey
Medical Examiner System despite his declaration otherwise in the
pending federal case, there is no evidence that any training was
offered to others in the period from May 1995 on.  Thus, the
present record does not support a claim that similarly-situated
people were provided training.

Plaintiff also fails to negate every conceivable rational
basis for his differential treatment, even assuming he were
similarly-situated.  It is beyond peradventure that the rational
basis test looks for "any conceivable legislative purpose," that
is rationally related to legitimate end.  See Ramsgate Court
Townhome Ass'n v. West Chester Borough, 313 F.3d 157, 160 (3d
Cir. 2002).  See also Tuan Anh Nguyen v. I.N.S., 533 U.S. 53, 75
(2001) (noting that it is "constitutionally irrelevant what
reasoning in fact underlay" the decision in question, so long as
it is supported by a rational basis) (internal quotation
omitted); Board of Trustees v. Garrett, 531 U.S. 356, 367 (2001)
("[T]he State need not articulate its reasoning at the moment a
particular decision is made.  Rather, the burden is upon the
challenging party to negative any reasonably conceivable state of
facts that could provide a rational basis for the
classification."); Heller v. Doe, 509 U.S. 312, 319 (1993) ("A
State, moreover, has no obligation to produce evidence to sustain
the rationality of a statutory classification."); Federal

24

Communications Comm'n v. Beach Communications, Inc., 508 U.S. 307, 315 (1993) ("[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data."). This "no conceivable basis" implementation of Equal Protection Clause review, eschewing the necessity of evidence or an explanation on the part of the State actor and placing the burden on the Plaintiff to negate all conceivable reasons rationally related to a legitimate government purpose, has been uniformly applied to class-of-one equal protection actions regardless of the state actor. See Garrett, 531 U.S. at 367; Leheny v. City of Pittsburgh, 183 F.3d 220, 226 (3d Cir. 1999) (applying "no conceivable basis" test to city policy); Highway Materials, Inc. v. Whitemarsh Tp., No. 04-4195, 2010 WL 2680996, at *6-7 (3d Cir. 2010) (applying "no conceivable basis" test to actions of township in class-of-one claim); Lauth v. McCollum, 424 F.3d 631 (7th Cir. 2005) (applying "no conceivable basis" test to police chief who asked a Board of Police Commissioners to sanction the plaintiff for misfeasance); Montanye v. Wissahickon School Dist., 399 F. Supp. 2d 615, 622 (E.D. Pa. 2005).

    The only uncertainty in this area of law is whether, in addition to negating any conceivable rational basis, the plaintiff must also adduce evidence of malice. See Jicarilla Apache Nation v. Rio Arriba County, 440 F.3d 1202, 1209 (10th

25

Cir. 2006) (explaining the views of different circuits on this matter).  The Third Circuit Court of Appeals has not decided that question, and this Court need not reach it because "[e]ven if subjective ill will is a necessary condition for a class-of-one claim, it is not a sufficient one," id., and Plaintiff has not shown that the State lacked any conceivable rational basis for its action.

In this case, the State could have rationally refused the training because Plaintiff was under active criminal investigation for conduct involving his professional work based on the personal knowledge of the State Medical Examiner.[6]  Such a decision, in light of the requirement of good standing for the eligibility the training is related to and the nature of the conduct being investigated, is not so irrational as to be a violation of the Equal Protection Clause.  The mere existence of an investigation is, of course, not indicative of wrongdoing; but a state official could rationally determine that since the existence of wrongdoing would make the training a waste of time, the training would not be offered until the investigation being

---

[6] There is no dispute that the Essex County Prosecutor was actively investigating Dr. Speth's conduct throughout the entire period of time from before Speth requested training in May 1995 until the felony indictment was returned in October 1995. Thereafter, while Dr. Speth was facing trial for three crimes in connection with his work as a pathologist, the State Medical Examiner likewise had a conceivable rational basis to deny training to a physician under indictment.

conducted by Essex County concluded and an indictment was either sought or not sought.

Plaintiff makes three arguments against this conceivable rational basis: that it was not the actual basis for denying training, that a bad faith investigation cannot be a rational basis, and that even a good faith investigation cannot be a rational basis.

Plaintiff argues that the criminal investigation could not have been the State's actual reason for failing to schedule the training. Plaintiff points to the State's offering of training as late as August 1995 to show that the ongoing criminal investigation had not yet dissuaded them from offering the training. Plaintiff asks the Court not to take the August 1995 offer of training as evidence that the State was actually planning to schedule the training, but only as evidence that the State was not denying the training based on the criminal investigation.

All this would prove is that as of August 10, the State had not yet decided to withhold the training on the basis of the criminal investigation. That is irrelevant for two reasons. First, the State's actual reasoning does not enter into the picture where the classification does not involve a protected class. See Tuan Anh Nguyen, 533 U.S. at 75 (contrasting the search for the actual purpose underlying a decision under

27

intermediate scrutiny with the search for any conceivable reasoning that characterizes rational basis review).  Second, it may simply be that by August 10 the State had not fully coalesced its position on whether training should be offered to Plaintiff.

Next, Plaintiff contends that a criminal investigation brought in bad faith cannot form a rational basis for differential treatment.  While the Court may agree with this legal proposition in principle, the factual premise is not established on this record; nor would it seem amenable to proof given that Plaintiff was ultimately convicted of some of the conduct under investigation as of May 1995, while at least some juror or jurors were convinced beyond a reasonable doubt of Speth's guilt on the remaining charges upon which the jury ultimately hung.

And finally, Plaintiff argues that it is irrational to deny the training because of mere investigation, when some state benefits are provided to even people who have been convicted of crimes.  Plaintiff cites Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326 (3d Cir. 1987), which held that a prison policy of requiring a court order in order to allow an inmate to terminate her pregnancy was "an 'exaggerated response' to its asserted financial and administrative concerns and to its presumed security concerns" and bore "no 'logical connection' to the traditionally recognized

penological objectives of rehabilitation or deterrence of crime,
and is thus unreasonable." Id. at 344.  Plaintiff's argument is
a non-sequitur.  The fact that it would be irrational to deny
access to medical care for prisoners who sought to terminate
their pregnancies has nothing to do with whether the State can
rationally choose to withhold from someone the training necessary
to make them eligible serve in the state medical examiner system
when that individual is under investigation and subsequently
indicted and convicted for criminal conduct related to an autopsy
based on personal knowledge of the State Medical Examiner.  As
should be obvious, some differential treatment related to
criminal conduct is rational, and other differential treatment is
not.  In this particular case, the decision was rational, and
that is all the equal protection clause requires in this
circumstance.

Because Plaintiff has not shown that he was similarly-
situated to those who received training, and has not shown that
the State lacked a conceivable rational basis for withholding
training, he is not entitled to summary judgment as to his equal
protection claim.

**IV.  CONCLUSION**

Plaintiff's motion will be denied because he has not shown
that he has either a liberty or property interest in his

29

eligibility for the state positions, or that the denial of the training was a violation of the Equal Protection Clause.

Although some of the conclusions in this opinion would appear to entitle Defendants to summary judgment, the Court will not enter such judgment until Plaintiff has the opportunity to be heard on whether Defendant should be granted summary judgment.

     The accompanying Order will be entered.


**November 9, 2010**                    **s/ Jerome B. Simandle**
Date                                  JEROME B. SIMANDLE
                                      United States District Judge