IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

CLAUS PETER SPETH,

              Plaintiff,

      v.                              HON. JEROME B. SIMANDLE

ROBERT GOODE, et al.,                 Civil Action
                                      No. 95-0264 (JBS/AMD)
              Defendants.

                                      **OPINION**

APPEARANCES:

Fredric J. Gross, Esq.
FREDRIC J. GROSS LAW FIRM
7 East Kings Highway
Mount Ephraim, NJ 08059
      Attorney for Plaintiff

William P. Flahive, Esq.
24 Arnett Avenue
Suite 103
Lambertville, NJ 08530
      Attorney for Defendants

**SIMANDLE**, District Judge:


I.  **INTRODUCTION**

      This matter is before the Court on two motions: Plaintiff's

motion to lift the stay in this case and reinstate the stayed

counts [Docket Item 129]; and Defendants' motion for summary

judgment as to all claims based on the statute of limitations

[Docket Item 131].[1]  The principal issues to be decided are whether Plaintiff may rely on the continuing violation doctrine to make his claims timely, and whether a stay continues to be warranted and within the power of the Court.  For the reasons explained below, the Court finds that Plaintiff may not rely on the continuing violation doctrine or related doctrines, making some of his claims untimely, and the Court finds that the stay should be lifted.  Consequently, the Court will grant in part and deny in part Defendants' motion and grant Plaintiff's motion.

## II.  BACKGROUND

### A.  Dr. Goode's Report and the Letter of Ineligibility

This case is about Plaintiff Dr. Speth's allegations of a sprawling "bureaucratic vendetta" against him lasting over a decade and purportedly involving the acts of various state officials who defamed and undermined him.  Although Plaintiff has pleaded facts going back many decades, for our purposes, the relevant facts appear to begin in 1992.  In February of that year, Plaintiff withdrew himself from consideration for reappointment as the Gloucester County Medical Examiner upon

---

[1]  Plaintiff has conceded that Count IX should be dismissed because it is barred by the statute of limitations.  (Pl.'s Opp. to Motion for Summ. J. at 8.)  Plaintiff also voluntarily dismisses all claims against the deceased Defendant Carley.

learning he would not win a reappointment vote.  (Id. ¶ 124.)[2]
Plaintiff believed he would not be reappointed because the State
Medical Examiner, Defendant Dr. Goode, had informed the County of
a lengthy report that Dr. Goode had composed criticizing
Plaintiff's suitability as a medical examiner.  (Id. ¶¶ 120-124.)

Shortly thereafter, Dr. Goode withdrew Dr. Speth's
eligibility to serve as County Medical Examiner in the State of
New Jersey, and suspended for one year his "eligibility to
conduct death investigations under the auspices of the Medical
Examiner System in New Jersey, and to serve as a designated
pathologist."  (Sept. 3, 2010 Gross Decl. Ex. A ("April 10, 1992
Letter of Ineligibility"), Docket Item 104.)[3]  The Letter of
Ineligibility set various conditions for reinstatement of
eligibility, including remedial training.  (Id.)  Dr. Speth
challenges the accuracy of Dr. Goode's report, the allegedly
defamatory contents and re-distribution of which, along with the
April 10, 1992 Letter of Ineligibility, form the basis for many
of Dr. Speth's subsequent claims.

---

[2]  Although it is no longer the operative pleading,
Plaintiff verified the First Amended Complaint as a true and
accurate statement of the facts.  (September 3, 2010 Gross Decl.
Ex. C.)  Plaintiff relies on the allegations in this pleading in
his opposition to the summary judgment motion.

[3]  The meaning of this letter and the related law is
examined in greater detail in this Court's Opinion of November 9,
2010, denying Plaintiff's motion for partial summary judgment.
[Docket Item 138.]

**B.   The Puttorak Autopsy**

After leaving the state examiner system in 1992, Dr. Speth began performing private death investigations.  In one such investigation in 1993, Plaintiff examined various specimens on behalf of the estate of the deceased, Ronald Puttorak.  (First Am. Compl. ¶ 157.)  Defendant Natarajan, the official medical examiner in the case, had previously completed the formal autopsy and had concluded that the cause of death was suicide.  (Id. ¶ 158.)  Plaintiff claims that he discovered hemorrhage-bearing tissue and a fracture which Natarajan had missed, and which was inconsistent with the finding of suicide.  (Id. ¶ 165.) Plaintiff was observed by the morgue attendant to be "picking with his fingers at the tissue surrounding the hyoid bone."  See Speth v. Goode, No. 95-cv-264, Slip. Op. at 8 (D.N.J. Apr. 28, 1995).  Shortly thereafter, the Essex County Prosecutor began investigating whether or not Plaintiff had tampered with the evidence.  This criminal investigation ultimately resulted in Dr. Speth's indictment and conviction, discussed below.[4]

**C.   The Spencer Trial**

According to Dr. Speth, in March 1994, attorney Francis

---

[4]  Plaintiff later claimed that Natarajan tampered with the evidence to make it seem as if Dr. Speth had tampered with it. [See Docket Item 38, Proposed Second Amended Complaint ¶ 233.]

4

Monahan contacted Dr. Natarajan, who by that time was acting as interim State Medical Examiner, to determine if Dr. Speth could examine evidence in her possession relating to the prosecution of his client, Tracy Spencer. (First Am. Compl. ¶ 185.) Natarajan denied Monahan's request and, according to Monahan, tried to convince him not to use Plaintiff as an expert by stating that Plaintiff was under criminal investigation. (Id. ¶¶ 185-86.)

Monahan nevertheless hired Plaintiff, and Natarajan, represented by Deputy Attorney General Marsetta Lee, appeared before the judge in the case against Tracy Spencer to voice her concerns about the possibility of Plaintiff handling the evidence. (Id. ¶ 187.) Plaintiff contends that Defendant Lee's presentation was ex parte and in camera and was made in an effort to enjoin Plaintiff from ever serving as an expert in any case involving Medical Examiner System evidence. (Id. ¶ 188.)

Plaintiff claims that Natarajan complained to the judge that Plaintiff had sued the State Medical Examiner, and made disparaging remarks about Plaintiff. (Id. ¶¶ 188-191.) The judge declined to impose the blanket relief sought by the Attorney General, and instead ordered that Plaintiff could examine the evidence by watching the approved Medical Examiner perform the necessary work. (Id. ¶¶ 193-96.)

In addition to this incident, the only one that has ever been explained in any detail, Plaintiff also alleges that the

Goode Report and Letter of Ineligibility were used on other
occasions as a basis to attack his credibility as an expert
witness.  (Third Am. Compl. ¶ 15.)

### D.  The Federal Complaint and Plaintiff's Indictment

Plaintiff did not file his federal complaint in this matter
until January 5, 1995.  The voluminous initial complaint included
claims for defamation, constitutional violations, and tort claims
related to the harm to Plaintiff's economic interests.  Much of
that first complaint consisted of Plaintiff's explanation for why
Dr. Goode had a vendetta against him, going back to professional
conflicts from the 1980s.[5]  The complaint named as defendants
Geetha Natarajan, Richard T. Carley (who is since deceased and
who Plaintiff has agreed to dismiss), and Deputy Attorney General
Marsetta Lee, in addition to Dr. Goode and the State of New
Jersey.  Plaintiff filed an Amended Complaint on March 9, 1995
[Docket Item 3], making minor changes such as adding general
allegations regarding unidentified persons' use of the letter of
ineligibility to attack Plaintiff's credibility as an expert
witness.  (First Am. Compl. ¶ 137.)

On October 5, 1995, the Essex County Prosecutor's Office

---

[5]  This first complaint contained 215 lengthy paragraphs
(not including the three page introductory statement).  One
reaches the allegations regarding conduct upon which the claims
are based around paragraph 90.

indicted Plaintiff for criminal conduct related to the Puttorak autopsy and for interfering with the official investigation of that conduct.  Speth v. Goode, Civil No. 95-264, Slip Op. at 11 (D.N.J. December 29, 2004) (citing February 19, 2004 Foster Aff. Ex. G ("Indictment"), Docket Item 42).  The indictment included three counts: third degree tampering with a witness, based on Dr. Speth's attempt in April 1994 to persuade Defendant Natarajan to withhold testimony or physical evidence in the criminal proceeding; fourth degree tampering with physical evidence based on his conduct during the 1993 medical examination; and fourth degree false swearing based on his report from the 1993 examination.  (Id.)

On November 9, 1995, this federal civil case was stayed — the first of two stays in this case — pending the outcome of Plaintiff's state criminal matter.  The parties agreed that the statutes of limitations would be tolled "from the date of filing of the original complaint until thirty days after final disposition of" the criminal case and "during the pendency of any proceedings on any motion to reinstate this proceeding." (Defs.' Ex. D "Stipulation of Nov. 9, 1995".)   Plaintiff was convicted of third degree tampering with a witness on October 28, 1997. (February 19, 2004 Foster Aff. Ex. H ("Sentence"), Docket Item 42.)  The other two charges resulted in a deadlocked jury and were eventually dismissed upon Plaintiff's formal demand for a

speedy retrial.  The criminal matter was finally concluded on October 3, 2003.  This case was reopened on November 10, 2003 [Docket Item 35].

On January 29, 2004, Plaintiff moved for leave to file a Second Amended Complaint with supplemental claims [Docket Item 38].  The Second Amended Complaint as proposed was extremely lengthy.  At oral argument on the motion on April 16, 2004, Plaintiff agreed to file a Third Amended Complaint that better complied with the Federal Rules of Civil Procedure's requirements for concise and clear pleadings.  [Docket Items 46 & 48.] Consequently, the Second Amended Complaint was never actually filed, and the Third Amended Complaint was filed on April 29, 2004 [Docket Item 47].  The Third Amended Complaint — which is the currently operative document — took the notion of being concise to an extreme, removing most of the factual basis for the various claims made, relying on fact-denuded allegations such as that "defendants, as public officials, published numerous assertions that plaintiff was professionally incompetent," without reference to particular instances or explanations of the content of the assertions.  (Third Am. Compl. ¶ 12.)  The Third Amended Complaint alleges that "Defendants' publications of those defamatory materials continued within the year before this litigation commenced and continued after this litigation commenced."  (Id. ¶ 15.)

**E.  Remaining Claims and the Statute of Limitations**

Only five counts remain in this case.  Counts II and III relate to the issuance of the Letter of Ineligibility and the denial of training Dr. Speth needed to regain his eligibility to serve in the New Jersey medical examiner system.  The training aspect of the claim first appeared in the Third Amended Complaint.  Count II argues that the issuance of the letter and the denial of training violated Plaintiff's due process rights, and Count III argues that this conduct violated Plaintiff's equal protection rights.  The denial of training aspect of the claim is based on the fact that, in late May 1995, Dr. Speth's attorney asked that the training discussed in Dr. Goode's letter be scheduled, and the training was never scheduled.  The Court has separated each count into two parts: the State Medical Examiner's decision to declare Plaintiff ineligible for service within the state examiner system and imposition of requirements for regaining eligibility including remedial training, and the State's alleged refusal to schedule the remedial training.  The Court has already lifted the stay as to the latter part.  See Speth v. Goode, Civil Action No. 95-0264, 2010 WL 3947529 (D.N.J. Oct. 6, 2010).

The nature of the other remaining three counts is murkier. The claims have been stayed since 2004, and so Plaintiff has never been forced to explain them, and has so far elected not to

do so.  Count V states in full, "Defendants, acting under color
of state law, oppressively abused their offices for the personal
benefit of defendants Goode and Natarajan, and to the detriment
of Plaintiff."  (Third Am. Compl. ¶ 36.)  Count VI states in
full, "Defendants intentionally engaged in tortious interference
with Dr. Speth's prospective economic advantage."  (Id. ¶ 38.)
And Count VIII states in full, "Defendants tortiously interfered
with Dr. Speth's exercise of his New Jersey constitutional right
to exercise his trade."  (Id. ¶ 42.)

As this Court has repeatedly observed, it is unclear what
conduct gives rise to each count.[6]  Resting on his ability to
avoid explaining the Complaint unless forced to do so by
contention interrogatories or to defend a motion as to these
claims on their merits, Plaintiff maintains that any motion based
on the statute of limitations is based on improper guesswork.


**F.  The Current Stay**

In 1994, Plaintiff appealed the Letter of Ineligibility to
the New Jersey Office of Administrative Law ("OAL"), moving for
emergent relief which was denied.  (May 21, 2004 Foster Aff. Ex.
E., Docket Item 49.)  On December 5, 1994, before the merits of

---

[6]  Plaintiff contends that for these claims, paragraphs 11-
23 of the Third Amended Complaint are relevant, a comment which
would appear helpful at first blush until one realizes that
paragraphs 11-23 constitute the entirety of the substantive
allegations of that vague Complaint.

the claim could be reached, Plaintiff voluntarily withdrew his
appeal without prejudice.  (Id. Ex. F.)  Because of this state
proceeding and a proceeding involving Plaintiff's medical license
that was pending at the time, this Court stayed the injunctive
and monetary claims in this case on December 29, 2004.  Speth v.
Goode, Civil No. 95-264, Slip Op. 32-33, 57-58 (D.N.J. Dec. 29,
2004).  In his present motion, Plaintiff argues that the stay is
improper and should be lifted, while Defendant argues that the
stay should remain in place.


III.  SUMMARY JUDGMENT

    A.  Standard of Review

    Summary judgment is appropriate "if the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R. Civ.
P. 56(a).  A fact is "material" only if it might affect the
outcome of the suit under the applicable rule of law.  Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Summary
judgment will not be denied based on mere allegations or denials
in the pleadings; instead, some evidence must be produced to
support a material fact.  Fed. R. Civ. P. 56(c)(1)(A); United
States v. Premises Known as 717 S. Woodward Street, Allentown,
Pa., 2 F.3d 529, 533 (3d Cir. 1993).  However, the court will
view any evidence in favor of the nonmoving party and extend any

reasonable favorable inferences to be drawn from that evidence to that party. Hunt v. Cromartie, 526 U.S. 541, 552 (1999). Where the nonmoving party bears the burden of persuasion at trial, the moving party may be entitled to summary judgment merely by showing that there is an absence of evidence to support an essential element of the nonmoving party's case. Fed. R. Civ. P. 56(c)(1)(B); Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

### B.  Statute of Limitations

#### 1.  Relevant Dates and Limitation Period

The parties agree that a two-year period is the appropriate statute of limitations period for all claims in this case. See N.J. Stat. Ann. § 2A:14-2. The original complaint in this matter was filed on January 5, 1995. The parties entered an agreement to toll the statute of limitations from that date until November 10, 2003. After the case was reopened on that date, two months and nineteen days elapsed until Plaintiff filed a motion to amend the complaint on January 29, 2004. For claims contained in the proposed complaint attached to that motion, the statute of limitations is satisfied at the time of filing the motion. In re One Meridian Plaza Fire Litigation, 1993 WL 308726, at *2 (E.D. Pa. Aug. 12, 1993); Longo v. Pennsylvania Elec. Co., 618 F. Supp. 87, 89 (W.D. Pa. 1985); Gloster v. Pennsylvania R. Co., 214 F. Supp. 207, 208 (W.D. Pa. 1963); Fed. R. Civ. P. 3 ("A civil

action is commenced by the filing of a complaint with the
court.").  Thus, claims contained in or relating back to the
original complaint are timely if they arose after January 5,
1993.  New claims contained in the Second Amended Complaint are
timely if they accrued after March 24, 1993.  And new claims
contained in the Third Amended Complaint, which was never filed
as a proposed complaint before it was filed as the operative
complaint, are timely if they accrued after June 24, 1993.

    2.  <u>Counts II and III</u>

        a.  Claims based on issuance of letter of
            ineligibility and its conditions

The claims based on the composition of Dr. Goode's report
and its initial dissemination, as well as the composition and
sending of the letter of ineligibility, accrued prior to January
5, 1993 and are therefore barred.  Plaintiff's only argument for
their timeliness is his claim of a continuing violation, and that
argument is rejected below in Part III.C

        b.  Failure to Train Aspect of Counts II and III

Defendants calculate this claim as accruing on April 10,
1993 (i.e., at the conclusion of the one-year suspension),
running until the stipulated stay in 1995, and then running again
for five months after the case was reopened in 2003 and until the
Third Amended Complaint was filed.  Defendants' calculations are

correct, but the date Defendants propose the claim accrued is
incorrect.  Plaintiff's claim for failure to train could not have
accrued the day his one-year suspension ended, as at that time he
had neither been injured nor had any reason to know he would be
injured, since the training had not yet been denied.  See Oshiver
v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1386 (3d Cir.
1994) ("A claim accrues in a federal cause of action as soon as a
potential claimant either is aware, or should be aware, of the
existence of and source of an injury.")  Nothing in the Letter of
Ineligibility or the underlying statute and regulation compelled
Dr. Speth to seek the training as soon as he was eligible.  See
N.J. Stat. Ann. § 52:17B-83; N.J. Stat. Ann. § 52:17B-88; N.J.
Admin. Code § 13:49-7.1(d).  The training claim is therefore not
barred.

          2.  <u>Counts V, VI, VIII</u>

As discussed above, claims accruing prior to January 5, 1993
are barred.  However, it is unclear what conduct these three
claims refer to, so the Court cannot determine when they accrued.
Plaintiff argues that they refer to conduct occurring in 1993 and
1994.  Although Defendants are left in the difficult position of
not knowing precisely what conduct these claims are based on,
that is a position largely of Defendants' own making.  If
Plaintiff's Third Amended Complaint is too vague to tell what

conduct it is based on, then Defendants should make the
appropriate motion to clarify or dismiss the pleading.
Alternatively, Defendants could have propounded contention
interrogatories to discover exactly what conduct between 1993-
1995 gave rise to these claims.  The one thing Defendants cannot
do is simply guess about what conduct forms the basis for the
claims, and move for judgment as to the statute of limitations
upon that guess.  To the extent that any of these claims accrued
before January 5, 1993, they are untimely.

### C.  Continuing Violation

####   1.   The Continuing Violation and Continuing Tort Doctrines

Both the federal courts and New Jersey courts have a body of
law called the continuing violation doctrine, which provides an
equitable exception to the statute of limitations under certain
circumstances.  Plaintiff relies on this doctrine to argue that
the claims accruing prior to 1993 are timely.

The vast majority of precedent discussing this doctrine has
occurred in the very narrow circumstance of workplace
discrimination suits.  New Jersey courts describe the doctrine as
"an equitable exception to the statute of limitations" that
applies to "causes of action arising under anti-discrimination
laws" because "[a]n actionable claim under [New Jersey's Law
Against Discrimination] based upon a hostile work environment

frequently arises out of repeated incidents that take place over
time and by their cumulative effect make it unreasonable and
unhealthy for the plaintiff to remain in that work environment."
Alliance For Disabled In Action, Inc. v. Renaissance Enterprises,
Inc., 853 A.2d 334 (N.J. Super. Ct. App. Div. 2004)

In 2002, the Supreme Court decided National R.R. Passenger
Corp. v. Morgan, 536 U.S. 101 (2002), providing a clear
explanation of the doctrine in the workplace harassment context,
which New Jersey courts have adopted.  See Shepherd v. Hunterdon
Developmental Center, 803 A.2d 611, 623 (N.J. 2002); see also
Green v. Jersey City Bd. of Educ., 828 A.2d 883, 891 (2003)
(applying Morgan to Conscientious Employee Protection Act claim).
In the context of Title VII claims, the Supreme Court in Morgan
established several important principles: "First, discrete
discriminatory acts are not actionable if time barred, even when
they are related to acts alleged in timely filed charges.  Each
discrete discriminatory act starts a new clock for filing charges
alleging that act."  Second, "The existence of past acts and the
employee's prior knowledge of their occurrence . . . does not bar
employees from filing charges about related discrete acts so long
as the acts are independently discriminatory and charges
addressing those acts are themselves timely filed."  Third, and
most relevant to the present case, Morgan endorsed the
application of the continuing violation doctrine to a certain

16

class of claims, holding that "[h]ostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct.  The 'unlawful employment practice' therefore cannot be said to occur on any particular day.  It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own."  In other words, <u>Morgan</u> "distinguished between 'discrete' discriminatory acts, such as wrongful terminations, and acts concerning unlawful employment practices, which 'cannot be said to occur on any particular day,'" and applied the continuing violation doctrine to the latter set of claims.  <u>See</u> Mancini v. Township of Teaneck, 846 A.2d 596, 599-600 (N.J. 2004) (quoting Morgan).

There is also a doctrine in New Jersey law called the continuing tort doctrine, which has been applied in the context of nuisance torts.  The continuing tort doctrine holds that a tort claim related to conduct more than six years old will not be time-barred if "each injury allegedly constitutes a new tort, because each injury contains all the elements of a tort, without any need to refer to prior actions to establish liability." <u>Russo Farms, Inc. v. Vineland Bd. of Educ.</u>, 675 A.2d 1077, 1086-87 (N.J. 1996); see <u>Kolczycki v. City of East Orange</u>, 722 A.2d 603, 610 (N.J. Super. Ct. App. Div. 1999).

The two doctrines, though similarly named, have quite

17

different effects and justifications.  The continuing violation
doctrine is a doctrine based on the accrual of claims which are
an aggregate of wrongs, no single one of which would give rise to
a discrete claim.  By contrast, the continuing tort doctrine is a
doctrine permitting action on a new tort when the victim of the
tort has previously been the victim of similar or identical
discrete wrongs but took no action.  One doctrine addresses the
problem of actionable injuries that are a collective result of
many non-actionable sleights, and the other doctrine addresses
on-going injuries which the victim could previously have
prevented but which are ongoing.

     In some ways the two doctrines are merely two sides of the
same coin, however.  The continuing tort doctrine is an offshoot
of Morgan's holding that "[t]he existence of past acts and the
employee's prior knowledge of their occurrence . . . does not bar
employees from filing charges about related discrete acts so long
as the acts are independently discriminatory."  This is precisely
the holding of Russo, as applied to environmental torts;
knowledge that a nuisance has been occurring for more than two
years does not bar an action to abate the continuing nuisance so
long as the new injury constitutes a new tort.  Russo, 675 A.2d
at 1086-87.  And the continuing violation doctrine in the context
of employment discrimination relates to Morgan's holding that
where a wrong "cannot be said to occur on any particular day,"

18

then it may constitute a single wrong that does not accrue until it ends.

It is not clear that either New Jersey courts or federal courts extend these twin doctrines beyond their two usual contexts.  See Antrom v. Division Of Youth And Family Services, 2008 WL 373153 (N.J. Super. Ct. App. Div. 2008) ("This doctrine has been found to be applicable in cases where there is a continuing nuisance, or in those situations in which a hostile workplace is alleged. . . . Neither situation is the case here.").  The Third Circuit Court of Appeals has entertained application of the continuing violation doctrine to civil rights actions unrelated to employment in a handful of cases, but has held that it applies outside the employment context in only two cases:  Centifanti v. Nix, 865 F.2d 1422, 1433 (3d Cir. 1989) and Keystone Ins. Co. v. Houghton, 863 F.2d 1125 (3d Cir. 1988).  The former case applies the doctrine as one of several holdings without explanation or discussion, and the latter was overturned by the Supreme Court.  See Klehr v. A.O. Smith Corp., 521 U.S. 179 (1997).  That said, neither doctrine is necessarily confined to a particular subject matter, but it is confined to a particular conceptual frame:  either the delayed accrual of a claim based on aggregate wrongs (continuing violation doctrine) or the accrual of a new claim which is not barred by the victim's previous opportunity to prevent the wrong (continuing tort

19

doctrine).[7]


    2.   Application to this Case

    Plaintiff's invocation of the doctrine is misguided.  The

New Jersey Supreme Court has nicely summarized why Plaintiff's

approach is incorrect:

>        [T]he continuing violation theory cannot be
>        applied to sweep in an otherwise time-barred
>        discrete act. . . . As we have said, the
>        continuing violation theory was developed to

---

[7]      There are some unsettled issues of law which the
parties do not address regarding whether federal or state law is
controlling as to the federal claims.  Generally speaking,
accrual of federal claims is a matter of federal law while
tolling is a matter of state law.  See Hardin v. Straub, 490 U.S.
536, 543-44 (1989); Wilson v. Garcia, 471 U.S. 261, 269-70
(1985).  Whether the state doctrine or federal doctrine of
continuing violation applies when assessing a federal claim
therefore depends on whether the rule is one of accrual or of
tolling, a question that is unsettled.  See Wilson v. Wal-Mart
Stores, 729 A.2d 1006 (N.J. 1999).  The distinction between an
accrual rule and a tolling rule is also relevant to which party
bears the burden of making certain showings.  "Generally, a
litigant seeking equitable tolling bears the burden of
establishing" that a particular doctrine of equitable tolling
applies.  See Pace v. DiGuglielmo, 544 U.S. 408, 416-17 (2005).
Conversely, the defendant must ordinarily show that a claim
accrued outside the statutory period.  Though the precedent has
rarely explicitly addressed these issues, the approach of both
the federal and New Jersey courts has been for the state law
version of the doctrine to govern state law claims, and the
federal law version to govern federal claims.  See Morgan, 536
U.S. 101.  Both state and federal courts applying the doctrine
place the burden on plaintiff to show that the doctrine applies
to a particular cause of action that is otherwise shown to be
outside the statute of limitations.  In any case, the
distinctions between the state law and federal law versions of
the doctrine are not directly relevant here, since there is no
relevant difference between the state and federal doctrine as
applied to this case.

> allow for the aggregation of acts, each of which, in itself, might not have alerted the employee of the existence of a claim, but which together show a pattern of discrimination. In those circumstances, the last act is said to sweep in otherwise untimely prior non-discrete acts. . . . What the doctrine does not permit is the aggregation of discrete discriminatory acts for the purpose of reviving an untimely act of discrimination that the victim knew or should have known was actionable.

Roa v. LAFE, 985 A.2d 1225, 1233 (N.J. 2010).  In <u>Wilson v. Wal-Mart Stores</u>, 158 N.J. 263, 273 (1999), the New Jersey Supreme Court found that in order to constitute a continuing violation, the acts "must be continuous on an almost daily basis."  <u>See</u> <u>Giovanetti v. ICI Americas, Inc.</u>, 2006 WL 1520756 (N.J. Super. Ct. App. Div. 2006) (citing <u>Wilson</u>).  Federal law is in accord with this.  <u>Morgan</u>, upon which Plaintiff relies, is clear in holding that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  <u>Morgan</u>, 536 U.S. at 112.

Plaintiff attempts to do precisely what <u>Roa</u> and <u>Morgan</u> prohibit: tie together discrete incidents by invoking the continuing violation doctrine.  Each incident identified by Plaintiff, from the issuance of the Letter of Ineligibility to the Spencer case, is a discrete incident constituting an allegedly actionable wrong in itself.  If it was improper for Natarajan to seek to disqualify Dr. Speth from the Spencer case,

for example, then Plaintiff could have brought an action based on that incident standing alone.  He cannot use that discrete incident to try to bring in previous allegedly actionable discrete acts, such as the issuance of the Letter of Ineligibility.

Indeed, what Plaintiff is attempting to do is even further afield from the application of the doctrine rejected by <u>Roa</u>.  In addition to aggregating sporadic, discrete acts to revive untimely claims, Plaintiff does so by aggregating the acts of different actors who are grouped together only by Plaintiff's allegation of an "official vendetta."  This is not what the doctrine is for, and it does not apply to this case.

> 3.  <u>Continuing Violation/Tort Doctrines Distinguished from Conspiracy Doctrine</u>

Some of Plaintiff's arguments with respect to the continuing violation doctrine also refer to various aspects of conspiracy law (including antitrust conspiracy law), which Plaintiff seems to view as part of the same doctrine as the continuing violation doctrine.  But Plaintiff's invocation of conspiracy law is also meritless.  To begin, Plaintiff conflates the following separate concepts:  the exception to the hearsay rule for co-conspirators; liability for acts of co-conspirators; and the timeliness of a claim for a conspiracy that continues into the statute of limitations period.  These are different concepts, with different

standards and applications.  None of them are relevant to this
motion.

First, Plaintiff has never alleged facts satisfying the
elements of a conspiracy, or a claim involving conspiracy.
Plaintiff is misguided in thinking that the mere utterance of the
words "vendetta" or "co-conspirator" is enough to make one party
liable for the acts of another, or to tie together the discrete
acts of different individuals.  The only part of conspiracy law
that could potentially apply in a case in which there is no
formal claim of conspiracy is the hearsay rule.  That rule has no
bearing on the timeliness of Plaintiff's claims.

Second, even if the liability or statute of limitations
aspects of conspiracy doctrine applied to this case, it would not
avail Plaintiff.  The conspiracy doctrine does not allow recovery
for claims that are otherwise barred; instead, analogous to the
continuing nuisance doctrine discussed above, it allows recovery
for new acts despite the plaintiff having learned of the
conspiracy and its effects outside the statutory period.  See
West Penn Allegheny Health System, Inc. v. UPMC, --- F.3d ----,
2010 WL 4840093, at *14 (3d Cir. 2010) ("[I]t therefore appears
that West Penn may, consistent with the statute of limitations,
recover damages for the acts that occurred within the limitations
period.") (emphasis added).  Thus, even if the doctrine applied
upon the invocation of the word "conspiracy" absent the formal

elements of conspiracy, it would not make Plaintiff's time-barred claims actionable.

## IV.   REINSTATEMENT OF CLAIMS V, VI, & VIII

### A. History of the Stay

In Younger v. Harris, 401 U.S. 37 (1971), the Supreme Court held that for reasons of federal-state comity, federal courts should not enjoin pending state court criminal proceedings absent extraordinary circumstances.  Id. at 41.  This principle has been greatly expanded such that federal courts are now expected to stay or dismiss any claim for relief when it would interfere with a pending state judicial proceeding that implicates important state interests and affords an adequate opportunity to raise constitutional challenges.  Middlesex County Ethics Comm. v. Garden State Bar Assoc., 457 U.S. 423, 431 (1982); Zahl v. Harper, 282 F.3d 204, 209 (3d Cir. 2002).

After dismissing many of Plaintiff's claims on the merits in its Opinion of December 29, 2004, this Court entered a stay regarding the remaining claims for injunctive and monetary relief because of two pending state proceedings:  the OAL proceedings regarding Plaintiff's eligibility to serve in the New Jersey Medical Examiner system (appealing the letter of ineligibility) and the Board of Medical Examiner's proceedings related to Plaintiff's medical license.  See Speth v. Goode, No. 95-cv-264,

Slip. Op. at 32-33, 57-58 (D.N.J. Dec. 29, 2004).  The Court
focused particularly on the OAL proceedings, finding that, for
Younger abstention purposes, an administrative proceeding is
"pending" when it was terminated prematurely.  Id.  Because
important state interests were implicated by the OAL proceeding
from which Plaintiff withdrew without prejudice, and there was no
suggestion that Plaintiff could not have presented the equitable
and constitutional issues in those proceedings, the Court found
Younger abstention to be appropriate.  Id.  With respect to the
damages claims, the Court found that they should be stayed until
the medical licensure issue was resolved and the OAL determined
whether Plaintiff's medical examiner privileges were properly
suspended.  Id.

On June 19, 2007, the Court reopened this docket for further
proceedings based on Plaintiff's unopposed representation that no
state proceedings were still pending because he concluded the
state litigation on January 12, 2006, by entering a consent order
settlement with the New Jersey Board of Medical Examiners.
(Pl.'s Br. Supp. Motion to Reopen 1.)  The 2006 consent order
relates to the February 24, 1998 suspension of Plaintiff's
medical license as a result of his criminal conviction.  In
January 2006, Plaintiff and the Board of Medical Examiners
amicably settled the matter by agreeing to reinstate the medical
license subject to a probationary period and limited to forensic

25

medicine only.  According to Plaintiff, he reinstated the license
to "retired" status, which makes him ineligible to be a State
Medical Examiner (March 27, 2007 Speth Decl. ¶ 4).  Therefore,
Plaintiff maintained, the stay should be lifted.

The Court initially declined to lift the stay and found the
claims to be abandoned because of Plaintiff's counsel's repeated
failure to clarify Plaintiff's position as to certain aspects of
this case relevant to the stay.  The Court vacated the finding of
abandonment upon reconsideration, and has allowed Plaintiff
another opportunity to explain why the stay should be lifted.
Speth v. Goode, 95-cv-264, 2010 WL 3947529, at *3 (D.N.J. Oct. 6,
2010).


### B.  Analysis

As of 2006, Plaintiff is no longer seeking any injunctive
relief, has resolved the medical licensure proceedings, and would
have no standing to ask for reinstatement of his medical examiner
eligibility as he can no longer serve as a state medical
examiner.  Counsel for both sides agree that the OAL proceedings
can no longer be re-opened.  And as a result of today's Opinion,
Plaintiff's claims regarding the impropriety of issuing the Goode
Report and the letter of ineligibility will be dismissed on
statute of limitations grounds.  The question posed to this Court
is therefore whether Plaintiff's withdrawal without prejudice

from the 1993 OAL proceedings is sufficient to forever foreclose claims for monetary relief that merely involve similar facts to those that may have been decided in the OAL proceeding.  As explained below, such a functional dismissal of the damages claims is neither warranted nor within this Court's power.

While a temporary stay of the damages claims may have been warranted in the circumstances then present in 2004, a continued and infinite stay of the damages claims is no longer warranted by the level of federal-state interference present in this case. Plaintiff does not seek to enjoin any state proceeding or vacate any court order, or otherwise ask for any relief involving any state courts' past, current, or future conduct.  Plaintiff does not challenge the validity of any state law or regulation, and does not seek to compel any state action.  Plaintiff only seeks monetary relief based on the conduct of certain state officials, the underlying facts of which may also have been at issue in a state proceeding.  Therefore, the state interests protected by Younger abstention, such as giving the state courts an opportunity to alter the construction of state law to make it constitutional, or permitting the state to set its own practices and procedures for adjudication, are largely absent at the present time in this case.  See Addiction Specialists, Inc. v. Township of Hampton, 411 F.3d 399, 409 (3d Cir. 2005) (discussing Younger interests); Gwynedd Properties, Inc. v. Lower Gwynedd

27

Tp., 970 F.2d 1195, 1202 (3d Cir. 1992) (same).

Neither the Supreme Court nor the Third Circuit Court of
Appeals has ever held that a damages claim interferes with a
state proceeding simply because facts related to that claim could
have been determined in the state proceeding.  It is true that
the Supreme Court has found that if federal courts condone the
decision not to raise constitutional issues in the proceedings
set up under state law, it might suggest a lack of faith in the
state proceedings to competently adjudicate those issues, which
is the kind of federal-state friction Younger seeks to avoid.
See Huffman v. Pursue, Ltd., 420 U.S. 592, 608-09 (1975).  But
Huffman did not involve a damages claim, much less one brought
based on allegedly unconstitutional conduct of the executive that
is independent from the validity of any statute.  Id.  And the
Huffman court emphasized that the friction created by
adjudicating issues that could have been resolved in state court
was especially important when "the constitutional issue involves
a statute which is capable of judicial narrowing," which is not
the case here.  Id.

The potential friction created by addressing facts that
could have been adjudicated by the state courts may not even
become actual friction in this case.  Plaintiff represents that
he can prove his claims without reference to the facts that would
have been determined in the OAL proceeding if Plaintiff had not

28

prematurely terminated it.  (Pl.'s Reply Br. 16-18.)  Based on
the Opinion of then-Administrative Law Judge Jaynee LaVecchia
denying injunctive relief, the OAL proceeding was about the
procedural validity of the letter of ineligibility.  When
assessing the likelihood of success in the OAL proceeding, the
administrative law judge did not see the need to determine the
accuracy of the contents the Goode Report in order to assess
Dr. Speth's likelihood of success.  (May 21, 2004 Foster Aff. Ex.
E. at 4-5, Docket Item 49.)  Thus, if proof of Plaintiff's claims
does not rely on the procedural impropriety of issuing the letter
of ineligibility, there may be no interference at all.

     Finally, even if continued abstention were otherwise
warranted by the level of interference in this case, an infinite
stay of damages claims is not within this Court's power.  Neither
the Third Circuit Court of Appeals nor the Supreme Court has
decided whether Younger abstention applies to claims for damages
that interfere with state proceedings.  See Quackenbush v.
Allstate Ins. Co., 517 U.S. 706, 728 (1996).  As noted in this
Court's 2004 Opinion, the Third Circuit Court of Appeals has
taken something of a compromise position, holding that because a
damages claim seeks relief that is unavailable in ongoing state
proceedings, the appropriate action is to stay the damages claims
until the conclusion of the state proceedings.  Williams v.
Hepting, 844 F.2d 138, 144-45 (3d Cir. 1988).  This rule

providing for only a temporary stay of damages claims, which has been endorsed by the Supreme Court, is the necessary consequence of the scope of this Court's power to decline jurisdiction. Deakins v. Monaghan, 484 U.S. 193, 202 (1988) ("[T]he District Court has no discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceeding."). District courts have the power to dismiss injunctive relief only because courts control the discretionary relief they grant as courts sitting in equity. See Quackenbush, 517 U.S. at 719-20, 728. If Younger abstention applies to actions for damages at all, it requires only a temporary stay; it is impermissible to dismiss actions for damages that were not cognizable in ongoing state proceedings. Id.

Thus, in this case, the Court cannot maintain the stay now that it is clear that there is no longer any injunctive relief sought, and that the state proceedings can never be reopened. "An infinite stay is dismissal in all but name, and matters of jurisdiction and vindication of constitutional rights must not be made to turn on nomenclature alone." Major Tours, Inc. v. Colorel, 720 F.Supp. 2d 587, 601 (D.N.J. 2010). Since the state proceedings can no longer be resolved because of the passage of time and the 2006 consent order, it follows from Williams and Deakins that the stay must be lifted.

30

## IV.   CONCLUSION

The only claims whose accrual can be definitely identified —
the composition and initial distribution of the Goode Report and
Letter of Ineligibility — are barred by the two-year statute of
limitations and not saved by the continuing violation doctrine or
conspiracy doctrine.  The claims as to denial of training,
however, are timely without recourse to any equitable exception
to the statute of limitations.  The three other claims, Counts V,
VI, and VIII, are not pleaded with sufficient specificity to
determine their accrual dates, and Defendant has not yet forced
Plaintiff to divulge when they accrued.  Therefore, they cannot
be rejected upon this record on the basis of the statute of
limitations.  The continued imposition of the stay is
inappropriate, and will therefore be lifted in its entirety.

The accompanying Order is entered.


**January 20, 2011**                         **s/ Jerome B. Simandle**
Date                                         JEROME B. SIMANDLE
                                             United States District Judge

31