IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CLAUS PETER SPETH, | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 95-264 (JBS/AMD) |
| v. | |
| ROBERT GOODE, et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Frederic J. Gross, Esq.
7 East Kings Highway
Mt. Ephraim, NJ 08059
    Attorney for Plaintiff Claus Peter Speth

William P. Flahive, Esq.
24 Arnett Avenue
Suite 103
Lambertville, NJ 08530
    Attorney for Defendants Robert Goode, Geetha Natarajan, Marsetta Lee, and the Attorney General of the State of New Jersey

**SIMANDLE**, Chief Judge:

I. **INTRODUCTION**

This matter is before the Court on Plaintiff Claus Peter Speth's motion appealing the May 9, 2013 decision of Magistrate Judge Ann Marie Donio denying reconsideration of her November 28, 2012 order. [Docket Item 256.] The November 28, 2012 order granted in part and denied in part Plaintiff's motion for discovery. [Docket Item 237.] Specifically, the Magistrate Judge denied Plaintiff's motion to the extent it sought an _in camera_ review of several documents Defendants refused to produce.

Judge Donio concluded that the Defendants properly claimed these documents were protected by the attorney-client privilege and the Plaintiff had not met his burden to pierce the protection of that privilege. [Docket Item 237.] Judge Donio denied Plaintiff's motion for reconsideration and held that the Plaintiff had not presented any grounds on which to grant reconsideration as she had not overlooked any controlling law or dispositive factual matter. [Docket Item 255.]

For the reasons discussed herein, the Court will deny Plaintiff's motion appealing Judge Donio's decision and affirm the denial of Plaintiff's motion for an in camera review.

**II. BACKGROUND**

The factual and procedural background of this case is set forth in this Court's January 20, 2011 Opinion and is incorporated herein. [Docket item 153.]

The instant action arises out of Plaintiff's tenure as a county medical examiner and his subsequent suspension. In 1991, Defendant Dr. Robert Goode, the State Medical Examiner, conducted a review of the Gloucester County Medical Examiner's Office and the County Medical Examiner, Plaintiff Dr. Claus Speth. Dr. Goode composed a report criticizing Dr. Speth and shortly thereafter, Plaintiff withdrew his name from consideration for reappointment as County Medical Examiner.

On April 10, 1992, Dr. Goode issued a letter declaring that

2

Plaintiff would be ineligible to practice within the State Medical Examiner system for a period of one year, and after the year expired, would be required to complete a course on the rules and regulations governing the New Jersey Medical Examiner system and a seven day internship before being fully reinstated. Dr. Goode then retired and Defendant Dr. Natarajan was appointed Interim New Jersey State Medical Examiner.

Dr. Speth then began working in the private sector and served as an expert witness for defendants in criminal trials, among other things. Consequently, Dr. Speth still examined bodies at the State Medical Examiner's officer; however, Plaintiff was working as a private expert, not for the State. In 1993, a morgue attendant allegedly observed Plaintiff tampering with evidence by physically touching the tissue surrounding the hyoid bone of a deceased Essex County jail inmate whose body was in possession of the State Medical Examiner.

This ultimately led to a criminal investigation culminating in an indictment filed by the Essex County Prosecutor's Office on October 5, 1995. The indictment charged Plaintiff with third degree tampering with a witness based on Dr. Speth's attempts to persuade Defendant Natarajan to withhold testimony or physical evidence in a criminal proceeding and for two other counts. Plaintiff was convicted on the witness tampering charge on October 28, 1997. Dr. Speth was not convicted for any crime

arising out of the alleged removal of tissue from the hyoid bone or tampering with physical evidence.

Prior to being indicted and convicted of criminal charges, Dr. Speth filed the instant action against numerous defendants on January 5, 1995. After several motions and stays, Plaintiff is now proceeding on this Third Amended Complaint against Defendants Robert Goode, Geetha Natarajan, Marsetta Lee, and the Attorney General of the State of New Jersey. The following causes of action remain:

- Count II: Violation of Due Process for failure to train Speth in accordance with Goode's April 10, 1992 letter
- Count III: Violation of Equal Protection for failure to train
- Count V: Abuse of office for personal benefit
- Count VI: Tortious Interference with prospective economic advantage
- Count VIII: Tortious Interference with the New Jersey constitutional right to exercise trade.

Plaintiff alleges that Defendants prevented him from working in the office of the State Medical Examiner by imposing special conditions and restrictions on him and requiring him to receive certain training that others were not required to take. Plaintiff also alleges that Defendant Natarajan was actually the one who tampered with the tissue on the hyoid bone in the 1993 incident and that Natajaran, Defendant Goode and Defendant Lee were using their public office to cover up Natajaran's crime and tortiously interfere with his business. Plaintiff maintains that the Defendants prevented him from serving as an expert in several

4

cases and intentionally interfered with and economically harmed his professional business.

Plaintiff sought discovery of several documents from two previous criminal cases, State v. Spencer and United States v. Dumers, and argued that these documents were relevant to establishing his underlying claims against the Defendants. In Spencer, Plaintiff was hired by the defendant in this 1994 criminal case to examine evidence which Defendant Natarajan held in her possession as interim State Medical Examiner. Natajaran, represented by Defendant Lee, D.A.G., appeared before the judge in the criminal case and told the judge that she had concerns with Plaintiff handling evidence. Consequently, Plaintiff was permitted to supervise cuts made by a private sector expert but was not permitted to make cuts or examine the evidence himself. Plaintiff sought to compel production of the communications between Defendant Lee and Defendant Natajaran made in connection with these representations to the trial judge in Spencer. Defendants asserted that the attorney-client privilege applies to bar production of these documents.

In Dumers, a 1996 criminal case, Defendant Lee, on behalf of Defendant Natarajan, who was then Acting State Medical Examiner, sought to preclude independent second-opinion experts from cutting lab specimens. Defendant Lee certified that it was against the policy of the State Medical Examiner's Office to

permit outside experts to perform additional dissection on organs. Plaintiff sought documents between Lee and Natajaran, and Lee and Roseann, an employee at the State Medical Examiner's Office, related to draft certifications. Plaintiff hypothesizes that there was no actual policy prohibiting outside experts from performing dissections because the State Medical Examiner's Office specifically sought an outside expert in the Spencer case which prevented Plaintiff from examining pertinent evidence. Defendants refused to produce these documents and argued that these documents were protected by attorney-client privilege.

Plaintiff filed a motion to compel discovery to obtain these documents from the Spencer and Dumers case. These documents are arguably relevant to whether Defendants Natarajan and Lee tortiously interfered with Plaintiff's business as a private medical consultant. Plaintiff requested that the court conduct an in camera review of the documents to determine if the crime-fraud exception applied to pierce the attorney-client privilege.

In particular, Plaintiff argued there was sufficient evidence showing that Natajaran was the one who tampered with the deceased Essex County inmate's hyoid bone in violation of state law and that she actively prevented Plaintiff from performing his consulting services in Spencer to further the cover-up and intentionally interfere with his practice. Plaintiff also argued that the Dumers documents would elaborate on the alleged policy

6

of the State Medical Examiner's Office prohibiting outside experts from dissecting evidence. Plaintiff argued that this policy was not in effect less than two years prior when the State Medical Examiner's Office insisted on hiring a private sector expert to perform the dissection. Plaintiff argued the inconsistency between the Spencer case and the Dumers case shows that Plaintiff was singled out by Defendants for different, harsher treatment. Plaintiff also maintained that there was a high likelihood in Dumers that the alleged policy did not in fact exist and consequently, Defendant Lee engaged in fraud upon the court by certifying to this falsity.

Magistrate Judge Donio denied Plaintiff's motion for an in camera review of these documents. In her decision, Judge Donio first concluded that the Defendants established that the requested documents in Spencer and Dumers fell under the attorney-client privilege. Next, Judge Donio analyzed whether the Plaintiff met his burden showing that an in camera review was necessary to establish whether the crime-fraud exception applies. Judge Donio relied primarily on the standard set forth in United States v. Zolin, 491 U.S. 554 (1989), wherein the Supreme Court held:

> In fashioning a standard for determining when in camera review is appropriate, we begin with the observation that "in camera inspection . . . is a smaller intrusion upon the confidentiality of the attorney-client relationship than is public disclosure." Fried, *Too High a Price for Truth: The Exception to the Attorney-Client Privilege for*

7

> *Contemplated Crimes and Frauds*, 64 N. C. L. Rev. 443, 467
> (1986). We therefore conclude that a lesser evidentiary
> showing is needed to trigger in camera review than is
> required ultimately to overcome the privilege. Ibid. The
> threshold we set, in other words, need not be a stringent
> one.
>
> We think that the following standard strikes the correct
> balance. Before engaging in <u>in camera</u> review to determine
> the applicability of the crime-fraud exception, "the
> judge should require a showing of a factual basis
> adequate to support a good faith belief by a reasonable
> person," <u>Caldwell v. District Court</u>, 644 P. 2d 26, 33
> (Colo. 1982), that in camera review of the materials may
> reveal evidence to establish the claim that the
> crime-fraud exception applies.
>
> Once that showing is made, the decision whether to engage
> in <u>in camera</u> review rests in the sound discretion of the
> district court.

491 U.S. at 572. After citing this standard, the Magistrate Judge then concluded that the Plaintiff failed to meet this burden and denied his request for an <u>in camera</u> review. Specifically, Judge Donio reasoned:

> The support presented by Plaintiff to establish the
> existence of the crime asks the Court to conclude that
> Defendant Natarajan was responsible for the removal.
> Plaintiff has not sufficiently supported his assertion
> that it could only have been Defendant Natarajan who
> committed the act for which Plaintiff was charged and
> the timelines asserted are not grounded in sufficient
> evidence. Plaintiff has not met his burden of
> demonstrating that a reasonable person would conclude
> that a review of the documents at issue would establish
> the existence of the alleged crime or that any
> fraudulent statements were made to cover up Defendant
> Natarajan's involvement in the alleged crime.
> Furthermore, Plaintiff has provided no support upon which
> a reasonable person could base a good faith belief that
> an <u>in camera</u> review would show that the communications
> were in furtherance of the alleged crime or a subsequent
> alleged fraud on the court.

8

> . . .
>
> [T]he Court must determine whether Plaintiff's submissions allow for a good faith belief by a reasonable person that an in camera review would provide evidence that the crime-fraud exception applies to the documents in question. Plaintiff has not met this burden. In light of the evidence before the Court, the Court is not convinced that the policy statements made by Defendant Lee constituted a fraud for which the crime-fraud exception would apply. Even if the Court were to accept Plaintiff's assertions as to the absence of the policy at issue, Plaintiff has provided no evidence supporting his belief that an in camera review would provide additional evidence that the communications were in furtherance of the fraud. As the Court is unconvinced as to the existence of a fraud and unable to find any evidence adequate to support a good faith belief by a reasonable person that an in camera review would show otherwise, the Court declines to review the documents in camera and denies Plaintiff's motion to the extent it seeks an in camera review.

(Magistrate Judge Donio's November 28, 2012 Order at 18-19, 21.)

After his motion was denied, Plaintiff then filed a motion for reconsideration. Plaintiff put forth five arguments in support of his motion for reconsideration, namely: (1) the Court misunderstood the nature of Defendant Natajaran's allegedly criminal and fraudulent actions; (2) the Court rejected Plaintiff's timeline of events; (3) the Court misapplied the law when it stated "[t]he support presented by Plaintiff to establish the existence of the crime asks the Court to conclude that Defendant Natajaran was responsible for the removal" of the tissue on the hyoid bone; (4) the Court failed to give Plaintiff's characterization of the evidence sufficient weight; and (5) the Court erred by not finding that the policy attested

9

to by Defendant Lee in <u>Dumers</u> was nonexistant.

In an order, Magistrate Judge Donio denied Plaintiff's motion for reconsideration and found that all five grounds were insufficient to warrant relief. The order also stated:

> The Court notes that in three places the prior Order states the rule as whether the materials "would" as opposed to "may" reveal evidence to establish the claim that the crime-fraud exception applies. (Order [Doc. No. 237] 19, 21.) The Court now finds that even if the Court corrected those three sentences from "would" to "may" the Court's finding remains as the Court expressly stated that "[h]aving reviewed the submissions, the Court finds that Plaintiff has not met his burden of providing a 'factual basis adequate to support a good faith belief by a reasonable person that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.' <u>Zolin</u>, 491 U.S. at 572." (Order [Doc. No. 237] 18.)

(Magistrate Judge Donio's May 9, 2013 Order at 8 n.2.)

Plaintiff now moves and appeals Magistrate Donio's Order denying his motion for reconsideration and her Order denying his initial motion for an <u>in camera</u> review. Plaintiff argues that Judge Donio failed to apply the governing law on the crime-fraud exception to attorney-client privilege claims and that Judge Donio failed to articulate a detailed analysis of the documents supporting his motion. Plaintiff also argues that the Third Circuit's recent decision in <u>In re Grand Jury</u>, 705 F.3d 133, 153-54 (3d Cir. 2012) clearly held that the standard in applying the crime-fraud exception is "reasonable basis to suspect" not "sufficient to support." 705 F.3d at 153. Plaintiff argues that Judge Donio applied a stricter standard than required by case law

10

in determining whether to conduct an <u>in camera</u> review.

Defendants oppose this motion and maintain that Judge Donio's decision properly analyzed the facts and applied the appropriate law in denying Plaintiff's motion. Defendants argue that Judge Donio's decision was not clearly erroneous and should not be overturned.

**III. DISCUSSION**

**A. Standard of Review**

A district court reviewing a non-dispositive order by a Magistrate Judge must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c). <u>See also</u> 28 U.S.C. § 636(b)(1)(A) and <u>Haines v. Liggett Group, Inc.</u>, 975 F.3d 81 (3d Cir. 1992)(holding that the "clearly erroneous or contrary to law" standard applies to review of magistrate judge's discovery order deciding crime-fraud exception to attorney client privilege). A Magistrate Judge's finding is clearly erroneous when "although there may be some evidence to support it, the reviewing court, after considering the entirety of the evidence, is 'left with the definite and firm conviction that a mistake has been committed.'" <u>Kounelis v. Sherrer</u>, 529 F. Supp. 2d 503, 518 (D.N.J. 2008) (quoting <u>Dome Petroleum Ltd. v. Emp'rs Mut. Liab. Ins. Co.</u>, 131 F.R.D. 63, 65 (D.N.J. 1990) and <u>United States v. U.S. Gypsum Co.</u>, 333 U.S. 364, 395 (1948)). A ruling is contrary to law if "the

11

magistrate judge has misinterpreted or misapplied applicable law." Id. Where a Magistrate Judge "is authorized to exercise his or her discretion, the decision will be reversed only for an abuse of discretion." Id.

**B. Analysis**

The issue before the Court is whether Magistrate Judge Donio's order denying an in camera review of certain documents was clearly erroneous or contrary to law. For the reasons discussed below, the Court concludes that the Magistrate Judge's order should be affirmed.

It is well established that "the decision to engage in in camera review implicates a much more lenient standard of proof than the determination to apply the crime/fraud exception, as the intrusion on the asserted privilege is minimal." Haines, 975 F.3d at 96. Before engaging in an in camera review, a plaintiff must show "a factual basis adequate to support a good faith belief by a reasonable person . . . that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." Id. (citing United States v. Zolin, 491 U.S. 554, 572 (1989)). "For an in camera inspection, it would be sufficient for the district court, in its discretion, to consider only the presentation made by the party challenging the privilege." Haines, 975 F.3d at 96.

In contrast, a stricter standard is required to establish

that the crime/fraud exception applies to actually pierce the attorney client privilege and to compel the discovery materials to be turned over to adverse counsel. Specifically, "the party seeking discovery must present evidence which, if believed by the fact-finder, would be sufficient to support a finding that the elements of the crime/fraud exception were met." Haines, 975 F.3d at 96. The Third Circuit has recently clarified this standard and explained:

> Where there is a reasonable basis to suspect that the privilege holder was committing or intending to commit a crime or fraud and that the attorney-client communications or attorney work product were used in furtherance of the alleged crime or fraud, this is enough to break the privilege. The reasonable basis standard "is intended to be reasonably demanding; neither speculation nor evidence that shows only a distant likelihood of corruptions is enough."

In re Grand Jury, 705 F.3d 133, 153 (3d Cir. 2012)(citing In re Grand Jury, 417 F.3d 18, 23 (1st Cir. 2005)). This stricter standard does not apply when deciding whether to grant an in camera review; rather, it only applies when the court is deciding whether the crime/fraud exception to the attorney client privilege applies.

While Judge Donio correctly cited the appropriate standards in her order, the reasoning and analysis of her November 28, 2012 decision employ the stricter standard which is inappropriate when determining whether to grant an in camera review. Specifically, Judge Donio came to the following conclusions in her initial

13

November 28, 2012 order: (1) the Plaintiff did not sufficiently support his assertion that Defendant Natarajan committed a crime; (2) Plaintiff did not demonstrate that a reasonable person would conclude that a review of the documents at issue would establish that a crime or fraud occurred; and (3) Plaintiff did not provide any support from which a reasonable person could base a good faith belief that an in camera review would show that the communications were in furtherance of the alleged crime or fraud. (Magistrate Judge Donio's November 28, 2012 Order at 18-19, 21.)

In reaching these conclusions, Judge Donio initially applied a heightened standard of review to Plaintiff's request for an in camera inspection. Specifically, Judge Donio asked whether "a reasonable person would conclude that a review of the documents at issue would establish the existence of the alleged crime." (Magistrate Judge Donio's November 28, 2012 Order at 19.) This standard is stricter than that articulated by the Third Circuit which is whether there exists "a factual basis adequate to support a good faith belief by a reasonable person . . . that in camera review of the materials **may** reveal evidence to establish the claim that the crime-fraud exception applies." Haines, 975 F.3d at 96 (emphasis added).

However, on reconsideration, this error was brought to Magistrate Judge Donio's attention and Judge Donio acknowledged the error in her order. Judge Donio stated that she incorrectly

used the word "would" instead of "may" in several places in her opinion, but in correcting this error and applying the appropriate standard, Judge Donio affirmed that her conclusion remained the same and in accordance with United States v. Zolin, 491 U.S. 554 (1989).

The Court finds that Judge Donio's decision on reconsideration applied the correct standard and should be affirmed. Judge Donio correctly cited and applied Zolin when explaining the applicable standard and concluded that her decision to deny an in camera review would be the same. The Court can find no reason to set aside this holding and is not "left with the definite and firm conviction that a mistake has been committed." Kounelis, 529 F. Supp. 2d at 518.

A reasonable person could not have a good faith belief that the documents Plaintiff seeks may establish that the attorney-client communications were used to further an on-going crime or fraud. At most, one could speculate that these attorney-client communications may have been used to further a tort, specifically intentional interference with prospective economic advantage. Gathering possible evidence of a tort, however, is not a sufficient basis to conduct an in camera review or to trigger the crime-fraud exception to the attorney-client privilege. There is no non-privileged evidence "to support a reasonable belief that in camera review may yield evidence that establishes the

exception's applicability." Zolin, 491 U.S. at 574-75. There is not a logical connection between the proposition that there was really no state policy precluding outside pathologists from performing a dissection on the one hand and Dr. Natarajan's commission of the crime of tampering with evidence several years earlier on the other. The possible nexus between these privileged communications and the commission or contemplation of a crime has not been shown. Moreover, the notion that Lee as attorney and Natarajan as client made false statements to the court in which a party sought to use Speth as an outside expert may, at most, argue that these privileged communications may contain evidence supporting tortious interference with Speth's livelihood, but not evidence of a crime or fraud within the exception. Plaintiff has no fraud claim against these defendants in this case. Further, whether the state in fact had such of a policy of precluding outside examiners from themselves performing a dissection is readily ascertainable from discovery of non-privileged evidence without the necessity for in camera inspection of privileged documents, and Plaintiff has had more than a decade to explore this factual information.

Moreover, to the extent Plaintiff argues Defendant Lee committed fraud on the Court due to alleged errors in her certification, this argument is without merit. Under Plaintiff's theory, any potential error in an attorney's declaration to the

16

Court could open the door to piercing the attorney-client privilege. A party could make this argument with regard to almost any attorney-client communication and this could broaden the crime-fraud exception beyond its circumscribed application. Plaintiff has identified no case, and this Court has found none, suggesting that even a misstatement to a court by an attorney or client suffices to launch an in camera inspection of privileged attorney-client communications.

This case has been pending for over fifteen years. During that time, none of these Defendants have been accused, investigated or indicted for criminal wrongdoing by anyone except the Plaintiff. The Plaintiff remains convinced that he was wrongfully convicted of witness tampering and wrongfully indicted for evidence tampering. Plaintiff's accusations, however, lack a sufficient factual basis to permit a fishing expedition into privileged attorney-client communications in search of evidence that Dr. Natarajan committed the crime of which Dr. Speth was accused.

Judge Donio properly considered Plaintiff's arguments and applied the correct legal standard in denying reconsideration and declining to conduct an in camera review. A magistrate judge's decision regarding non-dispositive discovery issues is entitled to deference by this Court unless it is clearly erroneous or contrary to law. In this case, the Court finds that Judge

17

Donio's decision was not clearly erroneous or contrary to law.[1]

Therefore, the Court will deny Plaintiff's motion appealing the denial of his motion for reconsideration and affirm Judge Donio's decision denying in camera review.

### IV. CONCLUSION

For the reasons discussed herein, the Plaintiff's motion to appeal the Magistrate Judge's decision will be denied. The accompanying Order will be entered.


**July 3, 2013**                                  **s/ Jerome B. Simandle**
Date                                              JEROME B. SIMANDLE
                                                  Chief U.S. District Judge

---

[1] It is conceivable that the attorney-client privilege that protects these communications can be waived by implication at trial. For example, the client (Dr. Natarajan) could waive the privilege by relying on an advice-of-counsel defense as to conduct discussed in these communications and thereby "open the door" to their disclosure. See Livingstone v. North Belle Vernon Borough, 91 F.3d 515, 537 (3d Cir. 1996). If so, Plaintiff may renew this application if such developments occur at trial.

18