IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CLAUS PETER SPETH, | : | HON. JEROME B. SIMANDLE |
| Plaintiff, | : | Civil No. 95-264 (JBS/AMD) |
| v. | : | |
| ROBERT GOODE, et al., | : | **OPINION** |
| Defendants. | : | |

APPEARANCES:

Frederic J. Gross, Esq.
7 East Kings Highway
Mt. Ephraim, NJ 08059
    Attorney for Plaintiff Claus Peter Speth

William P. Flahive, Esq.
24 Arnett Avenue
Suite 103
Lambertville, NJ 08530
    Attorney for Defendants Robert Goode, Geetha Natarajan,
    Marsetta Lee, and the Attorney General of the State of New
    Jersey

**SIMANDLE**, Chief Judge:

## I.   INTRODUCTION

    This matter is before the Court on Defendants Robert Goode,
Geetha Natarajan, Marsetta Lee, and the Attorney General of the
State of New Jersey's motion for summary judgment [Docket Item
207] and Plaintiff Claus Peter Speth's cross-motion for summary
judgment [Docket Item 248].  Defendants move for summary judgment
on all remaining counts and Plaintiff moves for partial summary
judgment on Count II alleging a violation of substantive due
process.

For the reasons discussed below, the Court will grant
Defendants' motion for summary judgment and deny Plaintiff's
cross-motion for partial summary judgment.

## II. BACKGROUND

### A. Facts

The factual background of this case is explained in the
Court's August 9, 2012 opinion [Docket Item 228] and is
incorporated herein.

The instant action arises out of Plaintiff's tenure as a
county medical examiner and his subsequent suspension and
criminal conviction for witness tampering.  In 1991, Defendant
Dr. Robert Goode, the State Medical Examiner, conducted a review
of the Gloucester County Medical Examiner's Office and the County
Medical Examiner, Plaintiff Dr. Claus Speth.  Dr. Goode composed
a report criticizing Dr. Speth and shortly thereafter, Plaintiff
withdrew his name from consideration for reappointment as County
Medical Examiner.  (Defs.' Statement of Facts ¶ 3.)

The parties dispute how the Goode report initially was
disseminated, but it is undisputed that this report was released
to the public sometime between December 1991 and January 1992.
(Defs.' Ex. N, Speth Decl. ¶¶ 3-12.)

On April 10, 1992, Dr. Goode issued a letter declaring that
Plaintiff would be ineligible to practice within the State
Medical Examiner system for a period of one year, and after the

year expired, Dr. Speth would be required to complete a course on the rules and regulations governing the New Jersey Medical Examiner system and a seven day internship before being fully reinstated. (Defs.' Ex. E.)

Since Plaintiff was no longer eligible to work in the State Medical Examiner's Officer, Dr. Speth then began working exclusively in the private sector and served as an expert witness for defendants in criminal and civil proceedings, among other things. Consequently, Dr. Speth was occasionally retained to examine bodies at the State Medical Examiner's office; however, Plaintiff was working as a private expert, not for the State. (Speth Decl. Ex. 8.)

In 1993, Dr. Speth was retained as an expert in a civil case and was permitted to examine a deceased Essex County jail inmate whose body was in possession of the State Medical Examiner. During Dr. Speth's examination, a morgue attendant allegedly observed Plaintiff tampering with evidence by physically touching the tissue surrounding the hyoid bone of the deceased inmate. (Speth Decl. Ex. 7.)

This ultimately led to a criminal investigation. Plaintiff became aware of the criminal investigation in February 1994 when Deputy First Assistant Prosecutor John Redden filed a certification in the civil suit involving the Essex County jail inmate and revealed that the State was investigating Dr. Speth

for possible evidence tampering. (Defs.' Ex. O; Plaintiff's
Counterstatement of Material Facts ¶ 10.) This investigation
culminated in an indictment filed by the Essex County
Prosecutor's Office on October 5, 1995. The indictment charged
Plaintiff with third degree tampering with a witness based on Dr.
Speth's attempts to persuade Defendant Natarajan to withhold
testimony or physical evidence in a criminal proceeding, fourth
degree tampering with physical evidence and fourth degree false
swearing. [Docket Item 50, Ex. I, Indictment.] Plaintiff was
convicted on the witness tampering charge on October 28, 1997.
The other two charges resulted in a hung jury and were eventually
dismissed upon Plaintiff's formal demand for a speedy retrial.
[Docket Item 54, December 29, 2004 Op. at 11.] Dr. Speth was
therefore not convicted for any crime arising out of the alleged
removal of tissue from the hyoid bone or tampering with physical
evidence, but he was convicted of witness tampering.

While the criminal investigation and subsequent trial were
proceeding, Plaintiff requested training in accordance with the
April 10, 1992 letter. Plaintiff's first request for training
was made in May 1995 through a conversation between DAG Timothy
Crowley and Plaintiff's counsel. (Defs.' Ex. Q.) This
conversation did not result in any scheduled training so
Plaintiff's counsel followed-up with DAG Crowley through a letter
dated June 27, 1995. (Defs.' Ex. Q.) This letter requested that

the training be scheduled or that the requirement should be deemed waived. Hearing no response, the Plaintiff again contacted DAG Crowley on July 17, 1995 requesting that training be scheduled or waived. (Gross Decl. ¶¶ 2, 3.)

DAG Crowley wrote back to Plaintiff's counsel and advised him that the State would not waive the training requirements set forth by Dr. Goode in the April 10, 1992 letter. DAG Crowley advised Plaintiff's counsel that attempts were being made to schedule the training in November 1995. (Defs.' Ex. S.) However, Plaintiff was subsequently indicted on October 5, 1995, and all efforts to train him were ceased pending the criminal proceedings.

After Plaintiff's conviction on witness tampering, the State Board of Medical Examiners filed a complaint seeking revocation of Dr. Speth's license to practice medicine in New Jersey on February 24, 1998. On June 10, 1998, Plaintiff entered into an Interim Order voluntarily surrendering his medical license while he appealed his criminal conviction. His appeals were unsuccessful. On January 11, 2006, Plaintiff entered a consent order with the State Board of Medical Examiners with regard to his license. It was ordered and agreed that Dr. Speth's license was suspended for a seven and one-half year period ending in January 2006. Plaintiff's medical license was then reinstated on a "retired" status. Plaintiff has not made any additional

requests for training since his license was reinstated.  (Defs.'
Statement of Facts ¶¶ 26-30.)    The parties dispute whether Dr.
Speth is eligible to work in the State Medical Examiner's Office
when his medical license is in "retired" status.  However, the
Court notes that in Plaintiff's motion to reopen this case on
March 27, 2007, Plaintiff's counsel stated, "Dr. Speth's medical
license has been reinstated as a 'retired' license.  Dr. Speth's
Medical Examiner eligibility is mooted by his retired licensure."
[Docket Item 59-1 at 1.]

In addition, while under criminal investigation but prior to
being indicted, Dr. Speth filed the instant civil action against
numerous defendants on January 5, 1995.  After several motions
and stays lasting years due to Speth's criminal trial, appeals,
and license suspension, Plaintiff is now proceeding on this Third
Amended Complaint against Defendants Robert Goode, Geetha
Natarajan, Marsetta Lee, and the Attorney General of the State of
New Jersey.  The following causes of action remain:

- Count II: Violation of Due Process for failure to
  train Speth in accordance with Goode's April 10,
  1992 letter
- Count III: Violation of Equal Protection for
  failure to train
- Count V: Abuse of office for personal benefit
- Count VI: Tortious Interference with prospective
  economic advantage
- Count VIII: Tortious Interference with the New
  Jersey constitutional right to exercise trade.

Plaintiff alleges that Defendants prevented him from working in
the office of the State Medical Examiner by imposing special

6

conditions and restrictions on him and requiring him to receive certain training that others were not required to take. Plaintiff also alleges that Defendant Natarajan was actually the one who tampered with the tissue on the hyoid bone in the 1993 incident and that Natajaran, Defendant Goode and Defendant Lee were using their public office to cover up Natajaran's crime and tortiously interfere with his business. Plaintiff maintains that the Defendants prevented him from serving as an expert in several cases and intentionally interfered with and economically harmed his professional business on several occasions in the 1990s.

### B. Procedural Background

Due to the pending criminal investigation, indictment and trial, this case has been closed and reopened twice since its initial filing in 1995 and the complaint has been amended accordingly. The operative complaint is the Third Amended Complaint [Docket Item 47] which was filed on April 29, 2004, and contained thirteen counts against Defendants Dr. Robert Goode, Dr. Geetha Natarajan, Richard T. Carley, Marsetta Lee, various John/Jane Doe defendants, and the Attorney General of New Jersey. Plaintiff withdrew Counts IV and X. [Id.]

On December 29, 2004, this Court dismissed Counts I, VII, XI, XII, and XIII pursuant to Fed. R. Civ. P. 12(b)(6). Specifically, the defamation counts were dismissed on statute of limitations grounds and the Defendants' immunity for official

statements while the remaining claims were dismissed for failure
to state a claim.  [Docket Item 54.]  The only remaining counts
are for violation of procedural due process (Count II), violation
of equal protection (Count III), abuse of office for personal
benefit (Count V), tortious interference with economic advantage
(Count VI), and tortious interference with the state
constitutional right to exercise trade (Count VIII).

Prior to analyzing the instant motion for summary judgment,
the Court finds it necessary to review previous pertinent
opinions issued by the Court.

### 1.  November 9, 2010 Opinion

On November 9, 2010, this Court denied Plaintiff's Rule
56(d)(2) motion for partial summary judgment.  [Docket Item 138];
Speth v. Goode, Civ. No. 95-0264, 2011 WL 4669714 (D.N.J. Nov. 9,
2010).  Plaintiff sought judgment as to Defendants' liability for
two counts of the Second Amended Complaint related to the denial
of the training he needed to regain his eligibility to serve in
the New Jersey Medical Examiner system: Count II (Due Process)
and Count III (Equal Protection).  Id. at *1.  Both counts have
two components.  Id.  The first component involves the State
Medical Examiner's decision to declare Plaintiff ineligible for
service within the State Medical Examiner system and the
imposition of requirements for regaining eligibility, which
included remedial training.  Id.  The second component is the

State's alleged refusal to schedule the remedial training.  Id.

The Court denied summary judgment on Plaintiff's Procedural Due Process claim.  Id. at *4.  First, the Court found that Plaintiff did not have a property interest in the training sufficient to trigger the protection of the Due Process clause; Plaintiff had no property interest in eligibility, and Plaintiff did not seek to be appointed as a county medical examiner or a designated forensic pathologist.  Id. at *4-6.  Second, the Court found that Plaintiff had failed to establish that he had been deprived of a liberty interest because Plaintiff had not shown that the State's refusal to train him interfered with his occupational liberty so as to deprive him of a liberty interest. Id. at *6-8.  Therefore, the Court denied summary judgment as to Plaintiff's Due Process claim.

The Court also rejected Plaintiff's motion for summary judgment as to his Equal Protection claim.  Id. at *8.  The Court found that Plaintiff had neither shown that he was similarly situated to individuals that were treated differently nor that the government lacked a rational basis for his alleged differential treatment.  Id. at *8-11.

### 2.  January 20, 2011 Opinion

On January 20, 2011, this Court dismissed Count IX.  [Docket Item 154]; Speth, Civ. No. 95-0264, 2011 WL 221664.  This Court also dismissed as time-barred parts of Counts II and III based on

the composition of Dr. Goode's report and its initial dissemination, as well as the composition and sending of the letter of ineligibility.  Id.

This Court explained that there is a two-year statute of limitations period for all claims in this case.  Id. at *5 (citing N.J. Stat. Ann. § 2A:14-2).  The original complaint in this matter was filed on January 5, 1995.  Id.  Thus, claims contained in or relating back to the original complaint are timely if they arose after January 5, 1993.  Id.  New claims contained in the Second Amended Complaint are timely if they accrued after March 24, 1993.  Id.  And new claims contained in the Third Amended Complaint, which was never filed as a proposed complaint before it was filed as the operative complaint, are timely if they accrued after June 24, 1993.  Id.

Count IX alleged that Defendants Goode and Carley equitably defrauded Plaintiff by dissuading him from contesting the accusations made in the Goode report with false assurances about the report's effects on his eligibility.  Pl.'s Third Am. Compl. ¶¶ 43-45.  The Court found that Count IX should be dismissed because it was barred by the statute of limitations.  Speth, Civ. No. 95-0264, 2011 WL 221664, at *1 n.1.

Counts II and III relate to the issuance of the letter of ineligibility and the denial of the training that Dr. Speth needed to regain his eligibility to serve in the New Jersey State

Medical Examiner system.  Pl.'s Third Am. Compl. ¶¶ 26-33.  The
Court separated each count into two parts: (1) Dr. Goode's
decision to declare Plaintiff ineligible for service within the
State Medical Examiner system, including Dr. Goode's report, as
well as the State's imposition of requirements for regaining
eligibility and (2) the State's alleged refusal to schedule the
training.  Speth, Civ. No. 95-0264, 2011 WL 221664, at *3.  This
Court found that the first part of Count II and III — the claims
based on the composition of Dr. Goode's report, the initial
dissemination of Dr. Goode's report, and the composition and
sending of the letter of ineligibility — accrued prior to January
5, 1993, and these claims were therefore time-barred.  Id. at *5.
However, the second part of Counts II and III — the failure to
train aspect — was not time-barred because this aspect could not
have accrued until the training was denied.  Id.

### 3.  August 9, 2012 Opinion

The Defendants moved for summary judgment as to all the
remaining counts on March 29, 2012.  [Docket Item 207.]  The
Plaintiff filed opposition claiming that he needed to complete
additional discovery and arguing that there were outstanding
discovery motions, particularly a motion to overrule privilege
claims, that had yet to be decided.  The Court instructed the
Plaintiff to file a Rule 56(d) application in order to seek
deferral of the motion.  [Docket Item 213.]  The Plaintiff filed

a 56(d) affidavit [Docket Item 214] which was opposed by the Defendants [Docket Item 215].

The Court issued its August 9, 2012 Opinion which granted in part and denied in part Plaintiff's request for deferral.  Since Plaintiff's motion to overrule privilege claims was still pending, the Court found that the summary judgment motion was not ripe.  However, the Court rejected Plaintiff's additional arguments for deferral.  [Docket Items 228 and 229.]

The conclusion of factual discovery was delayed pending Plaintiff's motion to overrule Defendants' privilege claims [Docket Item 203] which Judge Donio ultimately granted in part and denied in part.  [Docket Item 237.]  Consequently, the Court denied Defendants' motion for summary judgment without prejudice to reopening after discovery disclosures were complete.  [Docket Item 240.]

Plaintiff filed a motion for reconsideration of Judge Donio's order which was subsequently denied.  [Docket Item 255.] Plaintiff then filed a motion to appeal Magistrate Judge Donio's order which was denied by the undersigned on July 3, 2013. [Docket Items 259 and 260.]  Factual discovery is now complete and the case is ripe for summary judgment.

### 4.  The Present Motion for Summary Judgment

Only Counts II (in part), III (in part), V, VI, and VIII remain.  Count II alleges violation of the Due Process Clause

based on failure to train, Pl.'s Third Am. Compl. ¶¶ 26-31; Count
III alleges violation of the Equal Protection Clause based on
failure to train, <u>id.</u> at ¶¶ 32-33; Count V alleges abuse of
office for personal benefit, <u>id.</u> at ¶¶ 35-36; Count VI alleges
tortious interference with prospective economic advantage, <u>id.</u> at
¶¶ 37-38; and Count VIII alleges tortious interference with the
New Jersey constitutional right to exercise trade, <u>id.</u> at ¶¶ 41-
42.

Defendants seek summary judgment on all counts.  Plaintiff
cross-moves for summary judgment on Count II only.

## III.  DISCUSSION

### A.  Standard of Review

Summary judgment is appropriate "if the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R. Civ.
P. 56(a).  A dispute is "genuine" if "the evidence is such that a
reasonable jury could return a verdict for the non-moving party."
<u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A
fact is "material" only if it might affect the outcome of the
suit under the applicable rule of law.  <u>Id.</u>  Disputes over
irrelevant or unnecessary facts will not preclude a grant of
summary judgment.  <u>Id.</u>

Summary judgment will not be denied based on mere
allegations or denials in the pleadings; instead, some evidence

must be produced to support a material fact. Fed. R. Civ. P. 56(c)(1)(A); <u>United States v. Premises Known as 717 S. Woodward Street, Allentown, Pa.</u>, 2 F.3d 529, 533 (3d Cir. 1993). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986).

> [Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

<u>Celotex</u>, 477 U.S. at 323.

However, the Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party. <u>Hunt v. Cromartie</u>, 526 U.S. 541, 552 (1999). <u>See</u> <u>also</u> <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007) (The district court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion.").

The summary judgment standard does not change when the parties have filed cross-motions for summary judgment. <u>See</u> <u>Appelmans v. City of Phila.</u>, 826 F.2d 214, 216 (3d Cir. 1987). Cross-motions for summary judgment:

> are no more than a claim by each side that it alone is
> entitled to summary judgment, and the making of such
> inherently contradictory claims does not constitute an
> agreement that if one is rejected the other is
> necessarily justified or that the losing party waives
> judicial consideration and determination whether
> genuine issues of material fact exist.

Transportes Ferreos de Venezuela II CA v. NKK Corp., 239 F.3d

555, 560 (3d Cir. 2001) (citing Rains v. Cascade Indus., Inc.,

402 F.2d 241, 245 (3d Cir. 1968)).  If review of cross-motions

for summary judgment reveals no genuine issue of material fact,

then judgment may be entered in favor of the party deserving of

judgment in light of the law and undisputed facts.  See Iberia

Foods Corp. v. Romeo Jr., 150 F.3d 298, 302 (3d Cir. 1998)

(citing Ciarlante v. Brown & Williamson Tobacco Corp., 143 F.3d

139, 145-46 (3d Cir. 1988)).

**B.  Analysis**

As there are five viable claims remaining, the Court will

address each claim separately below.

### 1.  Due Process (Count II)

The Plaintiff's alleged due process claim arises solely from

the Defendants' failure to provide him training in accordance

with Dr. Goode's April 10, 1992 letter.  The Defendants argue

that summary judgment is appropriate because the Plaintiff has

not established that he had a either a property interest or a

liberty interest in receiving the training.  The Plaintiff cross

moves for summary judgment and maintains that there was a

"mutually explicit understanding" between him and the Defendants
that the Defendants would offer Dr. Speth a remedial course
regardless of whether he was under a criminal investigation.
Plaintiff maintains that the refusal to offer him training was
arbitrary, irrational and tainted by improper motive and thus
violative of due process.  Plaintiff relies primarily on Stana v.
School Board, 775 F.2d 122, 126 (3d Cir. 1985); Board of Regents
State Colleges v. Roth, 408 U.S. 564, 577 (1972), and County
Concrete Corp. v. Town of Roxbury, 442 F.3d 159, 169 (3d Cir.
2006).

    The Due Process Clause provides that "[n]o State shall . . .
deprive any person of life, liberty, or property, without due
process of law."  U.S. Const. amend. XIV.  As discussed in this
Court's November 9, 2010 opinion, procedural due process requires
notice and an opportunity to be heard before a person is deprived
of a protected interest, except for "extraordinary situations
where some valid governmental interest is at stake that justifies
postponing the hearing until after the event."  Bd. of Regents of
State Colls. v. Roth, 408 U.S. 564, 570 n.7 (1972).  "The
requirements of procedural due process apply only to the
deprivation of interests encompassed by the Fourteenth
Amendment's protection of liberty and property."  Roth, 408 U.S.
at 569.  Therefore, the issue before the Court is whether
Plaintiff had a protected property or liberty interest in the

training required to reinstate his eligibility for the discretionary appointment as a county medical examiner.

### a.  Property Interest

Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Roth, 408 U.S. at 577.  Such property interests may extend well-beyond physical property, and may include such intangible benefits as a license essential to pursuing an occupation or livelihood.  Cleveland v. United States, 531 U.S. 12, 25 n.4 (2000).

Not every statute or informal understanding securing a benefit creates a protected property interest, and federal law determines whether an interest created by state law "rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 9 (1978) (quoting Roth, 408 U.S. at 577).  Eligibility can be a benefit in itself that cannot be denied without due process in certain circumstances.  Stana v. Sch. Dist. of Pittsburgh, 775 F.2d 122, 126-27 (3d Cir. 1985).  However, where the applicable state law grants discretion to the hiring agency, "there can be no tenable claim of entitlement to employment." Anderson v. City of Phila., 845 F.2d 1216, 1221 (3d Cir. 1988)

(citing <u>Robb v. City of Phila.</u>, 733 F.2d 286, 292-93 (3d Cir. 1984)); <u>see also</u> <u>McCool v. City of Phila.</u>, 494 F. Supp. 2d 307, 323-24 (E.D. Pa. 2007) (stating that "[t]he primary factor for determining whether a position on an eligibility list is a 'legitimate entitlement' is whether the employer has a communicated general policy of hiring people off the list without further consideration of their candidacy or discretion").

Plaintiff has failed to demonstrate that he has been deprived of property to which he has a legitimate claim of entitlement. The training necessary to become eligible for appointment to a county medical examiner's position is not a benefit, but merely a required prerequisite that must be met in order to obtain a benefit. The only way Plaintiff could have a property interest in the training would be if it derived from his property interest in eligibility. However, since employment in the State Medical Examiner system is discretionary, Plaintiff has no tenable claim of entitlement. <u>See</u> N.J. Stat. Ann. § 52:17B-83; N.J. Admin. Code § 13:49-7.1.

Additionally, Plaintiff has not shown that he was seeking employment in the State Medical Examiner system. Instead, he is claiming to have an interest in the abstract declaration of eligibility to do so. As discussed in this Court's previous opinion, this fact undermines Plaintiff's claims because New Jersey law only protects the rights of candidates for positions,

and it does not protect the rights of those only seeking eligibility because it is useful for other reasons. N.J. Admin. Code § 13:49-8.1(a).

It is undisputed that Plaintiff withdrew his name from consideration for reappointment as County Medical Examiner in 1992, and since then, has never applied for appointment in the State Medical Examiner's Office.  In the absence of his candidacy, there can be no claim of entitlement.

Furthermore, Plaintiff was able to request the remedial training as early as April 10, 1993.  Plaintiff delayed more than two years in requesting this training, more than double the time he was suspended.  This training was not an automatic entitlement.  The April 10, 1992 letter explicitly states:

> Upon completion of the 1 year suspension, **if it is your wish to re-enter the New Jersey Medical Examiner System**, your eligibility to conduct medicolegal death investigations and to serve as a designated pathologist may be reinstated after completion of a remedial course in the Laws, Rules and Regulations to be held by the State Medical Examiner, and the satisfactory completion of a 7 day internship under the supervision of the New Jersey State Medical Examiner Officer.

(Defs.' Ex. E, April 10, 1992 letter)(emphasis added).  This letter makes clear that the remedial training would be offered only if the Plaintiff expressed a desire to receive it.  The Plaintiff did not express such a desire until his counsel communicated an oral request for training in May 1995 when Speth was being actively investigated for criminal charges arising out

of work performed in the State Medical Examiner's Office.
Plaintiff provides no explanation for his delay in seeking this
remedial training and the record indicates that the Plaintiff
continued to work as a forensic pathologist from 1993-1995, the
period in which Plaintiff could have received training and chose
not to request it.  At most, Plaintiff asserts in his declaration
that he thought it would be fruitless to ask for the training
because "Goode would never allow me to regain eligibility to work
within the SME system."  (Pl.'s Decl. ¶18.)  This mere
speculation cannot excuse two years of neglect and is baseless
considering Goode is the person who instituted the training as a
path for Plaintiff to regain eligibility.

To the extent Plaintiff argues that the letter created a
"mutually explicit understanding" between him and the Defendants
that the Defendants would offer him a remedial course, this
argument is without merit.  The intervening criminal
investigation which occurred between Plaintiff's initial
suspension from the State Medical Examiner's Office in 1991 and
the time Plaintiff ultimately requested training in 1995
frustrated any "mutually explicit understanding."  The 1991
letter offering the training was issued prior to any criminal
investigation, and consequently, the subsequent criminal
investigation into Dr. Speth created obstacles and policy issues
which were not present in 1991.  In particular, an alternate

location had to be found since Dr. Speth could not be trained in
in the Region where he was indicted for evidence tampering.
(Defs.' Ex. T at 1.)  The State Medical Examiner's Office had to
identify an alternate location outside of the Region to provide
training.  The training then had to be tailored to meet New
Jersey's needs and requirements.  (Id.)  The issue also arose as
to Dr. Speth's motives in seeking the remedial training since he
had not expressed an interest in the training until he was
investigated criminally.  There was a concern that Dr. Speth
might use the training as an opportunity to gather evidence in
support of his defense to the criminal investigation against him.

In addition, the subsequent indictment, conviction and
license suspension negated any "mutually explicit understanding"
as these events rendered Plaintiff unable to receive the training
altogether.  The training could not be offered to Dr. Speth while
he was indicted or during his criminal trial, especially since
the indictment arose out of Dr. Speth's work in the State Medical
Examiner's Office.  Plaintiff was convicted on the witness
tampering charge and voluntarily surrendered his medical license
while he appealed his criminal conviction.  His appeals were
unsuccessful.  Pursuant to a consent order, it was declared that
Dr. Speth's license was suspended for a seven and one-half year
period ending in January 2006.  Therefore, Plaintiff was
ineligible to practice medicine between 1998 and 2004, when the

operative complaint was filed.  Accordingly, Plaintiff had no
entitlement to receive the remedial training since he was not
authorized to practice medicine at that time.[1]

Therefore, because Plaintiff has no legitimate claim of
entitlement, and Plaintiff has not shown that he was seeking
employment in the State Medical Examiner system, Plaintiff has
failed to establish a property interest sufficient to establish
his due process claim.

### b.  Liberty Interest

The liberty interests protected by the Fourteenth Amendment
include the right of the individual to engage in any of the
"common occupations of life."  Roth, 408 U.S. at 572.  While
liberty interests are not implicated in the denial of any
particular government job, liberty interests are implicated when
the government excludes an individual from eligibility for a
particular type of professional employment.  Id.; Piecknick v.
Commonwealth of Pa., 36 F.3d 1250, 1259 (3d Cir. 1994)
(maintaining that the Fourteenth Amendment secures the liberty to
pursue an occupation, not the right to a specific job); see,
e.g., Herz v. Degnan, 648 F.2d 201, 208 (3d Cir. 1981) (holding

---

[1] Plaintiff's medical license was ultimately reinstated on a
"retired" status in 2006.  Plaintiff has not made any additional
requests for training since his license was reinstated.  At
minimum, if Plaintiff was still interested in receiving the
remedial training, he would need to make a new request
considering he was ineligible to practice medicine for the eight
years following his conviction.

that an individual had a protected interest in her license to practice as a psychologist).

An individual's liberty interests are similarly implicated if he is removed from a particular government position in such a way as to have the effect of excluding him from an occupation because of the damage done to his professional reputation. <u>See</u> <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 236 (3d Cir. 2006). In <u>Wisconsin v. Constantineau</u>, 400 U.S. 433, 437 (1971), the United States Supreme Court held that an individual has a protectable interest in reputation. Specifically, the Court stated that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." <u>Id.</u>

However, damage to reputation alone is not enough; to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus a deprivation of some additional right or interest. <u>Hill</u>, 455 F.3d at 236. The courts have referred to these requirement as the "stigma-plus" test. <u>Id.</u> Under this test, an employment action can implicate a liberty interest if it is "based on a charge against the individual that might seriously damage his standing and associations in the community" or "imposes on him a stigma of other disability that forecloses his freedom to take advantage of other employment opportunities." <u>Robb</u>, 733 F.2d at

294.

Plaintiff has failed to show that Defendants have deprived him of a liberty interest in either of these ways. First, he has not shown that the Defendants' actions excluded him from eligibility for a particular type of professional employment. Withholding training excludes Plaintiff from employment in the State Medical Examiner system, but does not foreclose Plaintiff from the occupation generally; for example, he was still able to pursue many other jobs in the realm of his medical licensure, such as a private consultant, an expert in civil litigation, or a criminal defense witness. See Defs.' Statement of Material Facts ¶¶ 33-44; Pl.'s Decl. Ex. 8. Moreover, Plaintiff has not alleged that he sought the positions or designations for which he was ineligible without the training.

Second, Plaintiff has not shown that his claim meets the requirements of the "stigma-plus" test. Plaintiff has produced no evidence to support his claim that his reputation was damaged. Plaintiff's Third Amended Complaint alleges that Defendants "published numerous assertions that plaintiff was professionally incompetent," including the ineligibility letter. Pl.'s Third Am. Compl. ¶¶ 12-13.

The only publication alleged within the statute of limitations period (after January 5, 1993) and not protected by official immunity, was Dr. Natarajan's alleged statement to

Francis R. Monahan, Esq., wherein Dr. Natarajan allegedly told Monahan not to use Plaintiff as the expert in his criminal trial, State v. Spencer.  Natarajan allegedly said, "If you had children, would you allow a rapist to babysit them?" in trying to dissuade Monahan.  [Docket Item 5, Monahan Decl. ¶ 7.]  Defendant Natarajan then allegedly spoke with the judge on the case and attempted to bar Plaintiff from serving as an expert.

    While Natarajan disputes ever making this statement, giving all favorable inferences to the Plaintiff as the non-moving party, this singular statement fails to establish the requirements of the "stigma-plus" test.  Importantly, Natarajan's actions in the State v. Spencer case did not result in Plaintiff being excluded from the case.  Plaintiff still served as an expert in Spencer and was not precluded from rendering his professional services.  There is no evidence in the record that Natarajan's comment circulated outside of the Spencer case and prevented Dr. Speth from serving as an expert in any subsequent proceeding.  Accordingly, Dr. Speth's standing in the community was not severely damaged and he was not foreclosed from taking other employment opportunities as a result of these comments.[2]

    Furthermore, after reviewing the record, the Court finds

_____

    [2] To the extent Plaintiff argues dissemination of the Goode report implicated a liberty interest, the Goode report was published in 1991-1992, and any claims arising out of this report are barred by the statute of limitations as explained in the Court's previous January 20, 2011 Opinion.

that Plaintiff's complaints about damage to his reputation do not establish that the stigma was so severe as to virtually exclude him from an occupation. Plaintiff admits he was able to work and bring in a salary for his forensic pathology expertise. Plaintiff merely complains that his salary was diminished and not commensurate with his experience. This is insufficient to show that Plaintiff was excluded from his occupation and prevented from making a living.

In summation, Plaintiff has not produced any evidence that the State's refusal to train him deprived him of a property or liberty interest. Therefore, the Court will grant Defendant's summary judgment motion on Plaintiff's due process claims in Count II. Plaintiff's cross motion for summary judgment will be denied. Summary judgment for Defendants will be entered on Count II.

## 2. Equal Protection (Count III)

While equal protection jurisprudence has typically been concerned with differential treatment of groups, the United States Supreme Court has recognized that an equal protection claim can be sustained by a plaintiff who claims that he has been irrationally singled out as a "class of one." Engquist v. Or. Dept. of Agr., 553 U.S. 591, 601 (2008) (referencing Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). In order to establish a violation of the Equal Protection Clause of the

Fourteenth Amendment, a plaintiff must establish that: (1) the
defendant has intentionally treated him differently from others
"similarly situated," and (2) there is no rational basis for the
differential treatment. Olech, 528 U.S. at 565. As discussed in
this Court's November 9, 2010 opinion, Plaintiff has not met
either prong of the test articulated in Olech.

The Plaintiff relies on McCool v. City of Philadelphia, 494
F. Supp. 2d 307, 316 n.8 (E.D. Pa. 2007) for the proposition that
the correct standard to apply for an equal protection analysis is
whether Defendants acted arbitrarily, irrationally or whether
they were tainted by improper motive. Plaintiff's argument that
the rational basis test does not apply to his equal protection
claim is without merit.

First, this argument ignores Plaintiff's previous
stipulation that the rational basis test was the appropriate
analysis under the equal protection clause. (Def.'s Ex. J,
October 29, 2010, Oral Argument Transcript at 11:3-6.) Second,
Plaintiff's reliance on McCool v. City of Philadelphia, 494 F.
Supp. 2d 307, 316 n.8 (E.D. Pa. 2007) is of no moment. This
section of McCool discussed the standard of review for violations
of substantive due process and the differences between
legislative and executive acts. McCool did go on to address the
standard for an equal protection claim and explained that "a
classification that is drawn on suspect lines or burdens a

fundamental right will be subject to strict scrutiny, passing constitutional muster only if it is narrowly tailored to serve a compelling state interest." Id. at 317. All other classifications are subject to the rational basis test. Id. Therefore, Plaintiff's argument that the rational basis test does not apply here, is without merit.

### a. Similarly Situated Individuals

Plaintiff has not identified any other similarly situated individuals. Specifically, he has not identified any individuals who were seeking training but were not seeking a position in the State Medical Examiner system. Plaintiff has only pointed to one other individual who received training sometime prior to February 1, 1995, and was trained as a result of being hired in the State Medical Examiner's Office. (Pl.'s Statement of Facts ¶ F.) However, Plaintiff is not similarly situated to this individual since Plaintiff did not request training until May 1995 and Plaintiff expressed no desire in being hired by the State Medical Examiner's Office. As reasoned in this Court's November 9, 2010 Opinion:

> Plaintiff would only have been similarly-situated
> with such an individual if he had declared an
> interest in reentering the state examiner system.
> Indeed, Dr. Goode's letter to Plaintiff plainly
> stated that "if it is your wish to re-enter the New
> Jersey Medical Examiner System, your eligibility .
> . . may be reinstated after completion of a

remedial course."  Even if Plaintiff's request for
training in May 1995 were interpreted as a desire
to re-enter the New Jersey Medical Examiner System
despite his declaration otherwise in the pending
federal case, there is no evidence that any
training was offered to others in the period from
May 1995 on. Thus, the present record does not
support a claim that similarly-situated people were
provided training.

[Docket Item 138, Court's November 9, 2010 Op. at 23-24.]

The Court's reasoning has not changed.  The Plaintiff has

failed to supplement the record in any meaningful way to support

his equal protection claim.  The Plaintiff thus fails to meet

this prong of the <u>Olech</u> test.

<u>b.  Rational Basis</u>

Even if Plaintiff had identified a similarly situated

individual who was treated differently, Plaintiff also fails to

negate every conceivable rational basis for his differential

treatment.  In deciding whether there was a rational basis for

unequal treatment, "the burden is upon the challenging party to

negative any reasonably conceivable state of facts that could

provide a rational basis for the classification."  <u>Bd. of</u>

<u>Trustees v. Garrett</u>, 531 U.S. 356, 367 (2001).  "Moreover, the

State need not articulate its reasoning at the moment a

particular decision is made."  <u>Id.</u>  Consequently, to prove a lack

of rational basis, a plaintiff must negate every conceivable

rational basis for his differential treatment.

Plaintiff has not met this burden; he has not attempted to

negate any — much less "any conceivable" — rational bases for his allegedly differential treatment.  The State could have rationally refused the training because Plaintiff was under an active criminal investigation for conduct involving his professional work.  For example, Defendants could have rationally been concerned with having Plaintiff attend training in the very office in which he was alleged to have tampered with evidence.

Furthermore, county medical examiners must be fully licensed physicians "of recognized ability and good standing in his or her community."  See N.J. Admin. Code § 13:49-7.1.  While Speth was under an active criminal investigation about his professional conduct, a State official could have rationally determined that conducting the training would be a waste of State resources and that the training should be postponed until the criminal investigation and proceedings concluded.

In conclusion, Plaintiff has not established that his equal protection rights were violated.  Because Plaintiff has not shown that he was similarly situated to those who received training or that the State lacked a conceivable rational basis for withholding training, Plaintiff's equal protection claims must be dismissed and Defendants' motion for summary judgment will be granted for Defendants on Count III.

### 3.  Abuse of Office for Personal Benefit (Count V)

In Count V, Plaintiff alleges that "Defendants, acting under

color of state law, oppressively abused their offices for the
personal benefit of defendants Goode and Natarajan, and to the
detriment of plaintiff."  Pl.'s Third Am. Comp., ¶ 36.
Defendants correctly note that there is no private cause of
action for "abuse of office for personal benefit."  The Court
cannot find any authority to the contrary, and Plaintiff provides
none.  Therefore, Count V must be dismissed and Defendants'
motion for summary judgment will be granted.

### 4.  Tortious Interference (Count VI)

Count VI alleges that "Defendants intentionally engaged in
tortious interference with Dr. Speth's prospective economic
advantage."  Pl.'s Third Am. Compl. ¶ 37-38.  Tortious
interference with prospective economic advantage has four
elements: (1) a reasonable expectation of economic advantage to
the plaintiff; (2) an interference done intentionally and with
"malice"; (3) a causal connection between the interference and
the loss of prospective gain; and (4) actual damages.  Varrallo
v. Hammond Inc., 94 F.3d 842, 848 (3d Cir. 1996) (citing Printing
Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, (1989)).

As an initial matter, the time period for this cause of
action is confined from January 5, 1993, to October 4, 1995.  Any
events prior to January 5, 1993 are barred by the statute of
limitations.  The Plaintiff has conceded that he is only seeking
damages for pre-indictment causes of action, so any events after

31

October 4, 1995 would have occurred post-indictment. (Pl.'s Br.
at 27.)

Plaintiff relies on two instances within this time period to
support his claim for tortious interference.  First, Plaintiff
relies on Defendant Natarajan's comment to Attorney Monahan about
using Plaintiff as the defense expert in the State v. Spencer
case, discussed supra at Subsection B.1.b.  Giving all reasonable
favorable inferences to the Plaintiff, the Court will presume
that Dr. Natarajan made this statement.  The Plaintiff, however,
has not shown a loss of prospective gain from this statement.
The Plaintiff was still retained by Monahan as an expert and this
statement was not published to other third parties by Natarajan
or Monahan.  Therefore, this comment is insufficient to establish
Plaintiff's claim of tortious interference.

Next, Plaintiff argues that Defendant Lee certified to a
judge in the criminal case United States v. Dumers that Lee has
"informed [defense counsel] Menaker that it was against the
policy of the State Medical Examiner's Office to permit outside
experts to perform additional dissections of specimens."  [Docket
Item 203-4.]  The Plaintiff argues this information influenced
Menaker not to hire Plaintiff as the expert in Dumers. The
Plaintiff maintains that Lee referenced a policy which was
nonexistant and this certification was evidence of a deeper
conspiracy to prevent Dr. Speth from practicing forensic

pathology.  The Court rejected this argument as a basis to pierce

the attorney-client privilege in its recent July 3, 2013,

Opinion, and the Court incorporates its reasoning herein.

[Docket Item 259.]  Further, the Court finds that Lee's

certification, is consistent with N.J.A.C. 13:49-1.5(f) which

provides:

> No person, technician, or aide shall perform any part
> of the postmortem dissection of the body, without the
> direct and immediate supervision and observation of
> the medical examiner or designated pathologist and
> then, only after proper training and guidance.

N.J.A.C. 13:49-1.5(f).

In addition, Lee also certifies that she had this

conversation with Menaker after Plaintiff was indicted on October

5, 1995, and Plaintiff has already stated that he is not pursuing

any post-indictment claims.  (Docket Item 203-4, Lee Declaration

¶ 10.) Plaintiff's argument that Lee's certification somehow

tarnished his reputation when this averment is consistent with

the New Jersey Administrative Code and the conversation took

place after Dr. Speth was indicted for his forensic pathology

work are far-fetched and without a factual basis.  Moreover,

Plaintiff has provided no proof that this certification caused

him any economic harm, as Plaintiff had been indicted and was

awaiting criminal trial at the time of the <u>Dumers</u> case and would

not be a credible witness, regardless of Lee's certification,

because he would be subject to damaging impeachment on cross

33

examination.  Consequently, no rational jury could find that Lee's certification tortiously interfered with Plaintiff's prospective economic benefit.

Therefore, Defendant's motion for summary judgment will be granted as to Count VI.

### 5.  Tortious Interference with New Jersey Constitutional Right to Exercise Trade (Count VIII)

Count VIII alleges that "Defendants tortiously interfered with Dr. Speth's exercise of his New Jersey constitutional right to exercise his trade."  Pl.'s Third Am. Compl. ¶¶ 41-42.  Count VIII is duplicative of Count VI, as evidenced by Plaintiff's allegations of tortious interference in both counts.  The Court can find no precedent establishing that Count VIII is a separate cause of action from Count VI, and Plaintiff provides no such precedent to the Court.  The Court has found that the Plaintiff has failed to establish a claim for tortious interference in Count VI, as discussed supra.  Therefore, Count VIII will be dismissed and Defendant's motion for summary judgment will be granted as to Count VIII.

## IV. AFTERWORD AND CONCLUSION

This case has been pending for over eighteen years.  After two terminations and reopenings and several rounds of motion practice, the Court was left with five claims and a manageable record.  Instead of focusing on the remaining issues before the

Court, Plaintiff's counsel used the majority of his opposition

brief to argue claims that had already been decided, focus on

facts which were barred by the statute of limitations and make

unprofessional and inappropriate remarks towards the Defendants

and opposing counsel.  Plaintiff's counsel's redundant and

impertinent efforts wasted the Court's time and opposing

counsel's time on arguments that have already been made and

lost.[3]

Most troublesome with Plaintiff's brief was the language

used in putting forth Dr. Speth's argument.  There is a line

between advocacy and unprofessionalism which was crossed.  For

example, in Plaintiff's opposition brief, counsel makes the bold

statement without any citation to the record that Defendant

"Goode's passionate desire to screw Dr. Speth took precedence

over Goode's professionalism."  (Pl.'s Opp. Br. at 36.)

Plaintiff's reply in support of his cross-motion, which was filed

without permission of the Court in violation of L. Civ. R.

7.1(d)(3), stated, "Defendants now shed crocodile tears" and

"Defendants' Reply Brief is more appropriate for a junior high

---

[3] A portion of Plaintiff's opposition sought to reconsider
the Court's December 29, 2004 Opinion.  Plaintiff had previously
filed for reconsideration which the Court denied on June 7, 2005.
[Docket Items 55 and 58.]  Approximately eight years later,
Plaintiff's counsel continues to raise the same arguments that
were already fully litigated and decided, without advancing any
notion that controlling precedent has emerged or that newly
discovered evidence compels revisiting the decided issues.

school debating class than for a federal court." (Pl.'s Reply at 2-3.) These comments are wholly unnecessary, do not further the Court's legal analysis and are unprofessional. The Court finds it important to mention this conduct and remind Plaintiff's counsel of his obligation to be professional to opposing counsel and the Court. Language that lacks civility offends the duty of professionalism for advocacy before this Court. <u>See</u> Loc. Civ. R. 103.1(c)(incorporating the Guidelines for Litigation Conduct at App. R).[4]

For the reasons discussed above, Defendants' motion for summary judgment will be granted in its entirety. The Plaintiff's cross motion for summary judgment will be denied. This case will be closed upon the docket. The accompanying Order will be entered.


  **July 19, 2013**                    **s/ Jerome B. Simandle**
Date                                JEROME B. SIMANDLE
                                    Chief U.S. District Judge

---

[4] Loc. Civ. R. App. R. provides "Guidelines for Litigation Conduct, Lawyers' Duties to the Court" at ¶ 1 ("We will speak and write civilly and respectly in all communications with the court") and "Lawyers' Duties to Other Counsel" at ¶ 1 (". . . . We will treat all other counsel, parties, and witnesses in a civil and courteous manner, not only in court, but also in all other written and oral communications. . . .")